THE STATE OF OHIO, APPELLEE AND CROSS-APPELLANT, *v.* REED, APPELLANT AND CROSS-APPELLEE.

[Cite as State v. Reed (1981), 65 Ohio St. 2d 117.]

(No. 80-757—Decided March 31, 1981.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. William E. Breyer* and *Mr. F. David Albanese,* for appellee and cross-appellant.

*Mr. R. Scott Croswell III, Mr. Gregory L. Adams* and *Ms. Elizabeth Agar,* for appellant and cross-appellee.

CELEBREZZE, C. J. Defendant contends that the prosecution did not prove the presence of prior calculation and design, aggravated robbery and escape. In *State* v. *Sheppard* (1956), 165 Ohio St. 293, this court stated in the fifth paragraph of the syllabus, that:

"In an appeal from a conviction in a criminal case, this court will not retry the issues of fact but will confine its consideration to a determination of whether there is sufficient evidence to have warranted the submission of the case to the jury and whether there is sufficient substantial evidence to support the verdict rendered." This is the standard of review we shall utilize to assess the validity of the defendant's contentions.

R. C. 2903.01 states in part:

"(A) No person shall purposely, and with prior calculation and design, cause the death of another.

"(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.

"(C) Whoever violates this section is guilty of aggravated murder***."

This court interpreted the phrase "prior calculation and design" in *State* v. *Cotton* (1978), 56 Ohio St. 2d 8, stating, at page 11, that:

"***The apparent intention of the General Assembly in employing this phrase was to require more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill. Thus, instantaneous deliberation is not sufficient to constitute 'prior calculation and design.'"

In *Cotton* we held that a murder had been committed with prior calculation and design when the defendant wounded a police officer, shot at another officer, then went to the first officer and fatally shot him. The passage of time and the fact that the defendant returned to kill the officer constituted sufficient proof of a scheme designed to implement the calculated decision to kill.

In the case at bar, the evidence regarding the killing at most indicates the presence of instantaneous deliberation. The statements appellant made to a classmate that he would kill any police officer who got in the way of a crime he might commit do not show that appellant designed a scheme in order to implement a calculated decision to kill. Not only were the remarks significantly removed from the killing in terms of a time frame but they were very general in nature and thus were not relevant to the killing of Officer Burdsall.

R. C. 2911.01 states:

"(A) No person, in attempting or committing a theft offense as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;

"(2) Inflict, or attempt to inflict serious physical harm on another.

"(B) Whoever violates this section is guilty of aggravated robbery, a felony of the first degree."

R. C. 2913.02 states in part:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat.

"(B) Whoever violates this section is guilty of theft. * * *"

Clearly, both the aggravated robbery charge and the aggravated murder charge involved an attempted theft offense.

R. C. 2923.02 defines attempt, stating:

"(A) No person, purposely or knowingly, and when purpose or knowedge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense."

In *State* v. *Woods* (1976), 48 Ohio St. 2d 127, this court stated, at page 131, that the essential elements of a criminal attempt "are the *mens rea* of purpose or knowledge, and conduct directed toward the commission of an offense."

In the case at bar the act of peering through the window could constitute conduct directed to the commission of a theft offense, but without a showing of purpose to deprive the store owner of property, an attempt was not shown.

The state claims that appellant admitted an intent to commit a theft offense to a cousin, Damon Thomas, but a review of the record reveals that no such admission was actually made. The only evidence of intent was the suspicious nature of appellant's conduct in front of the store and the killing itself. We find neither of these, or both, a sufficient basis for constituting a purpose to commit a theft offense.

R. C. 2921.34 states in part:

"(A) No person, knowing he is under detention or being reckless in that regard, shall purposely break or attempt to break such detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.

"* * *

"(C) Whoever violates this section is guilty of escape, a felony of the fourth degree.* * *"

R. C. 2921.01(E) states:

" 'Detention' means arrest, or confinement in any facility for custody of persons charged with or convicted of crime or alleged or found to be delinquent or unruly, or detention for extradition or deportation. Detention does not include supervision of probation or parole, nor constraint incidental to release on bail."

R. C. 2921.33 provides:

"(A) No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another.

"(B) Whoever violates this section is guilty of resisting arrest, a misdemeanor of the second degree."

Clearly, the General Assembly intended that conduct constituting an escape be more culpable than and differ from conduct constituting resisting arrest. Resisting arrest is a misdemeanor of the second degree whereas an escape is a felony of the fourth degree.

A person is under "detention," as that term is used in R. C. 2921.34, when he is arrested and the arresting officer has established control over his person. In the case at bar such control was not established. Officer Burdsall had only approached the car with his gun drawn and ordered the occupants out of the car when he was shot.

In *State* v. *Butler* (1967), 11 Ohio St. 2d 23, at page 36, this court stated:

"* * *Under Section 2945.79(D), Revised Code, this court is authorized to modify a verdict if the evidence shows that the defendant is not guilty of the degree of crime for which he was convicted, but is guilty of a lesser included offense."[1]

---

[1] Crim. R. 33(A)(4), which has superseded R. C. 2945.79(D), states the same rule as provided in that statute, and reads as follows:

R. C. 2903.02(A) defines the offense of murder, as follows: "No person shall purposely cause the death of another." Murder is a lesser-included offense of the aggravated murder charges. We hold that there was insufficient evidence to convict defendant of aggravated robbery or escape. In addition we hold that there was insufficient evidence of prior calculation and design. As a consequence, the convictions on all three counts of aggravated murder must be reversed. We further hold that there was sufficient evidence to convict defendant of murder in violation of R. C. 2903.02.

Because of these holdings, we need not decide if conviction and consecutive sentencing for aggravated murder and for felonies underlying the aggravated murder convictions violated defendant's rights against double jeopardy or whether conviction and concurrent sentencing on the three aggravated murder charges violates R. C. 2941.25.[2] In addition we need not decide whether the trial court erred in allowing Officer Hamler to state that in his opinion a robbery was occurring. Any prejudice that might have been caused by such testimony went to the issue of whether defendant was guilty of aggravated robbery.

We must, however, decide whether it was error to allow the prosecution to question Barbara Brown regarding her earlier contradictory statements. Under Ohio law, a party is ordinarily not allowed to impeach his own witness. However, in *State* v. *Duffy* (1938), 134 Ohio St. 16, this court held in the second paragraph of the syllabus:

"When taken by surprise by the adverse testimony of its own witness***the state may interrogate such witness con-

"A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

"* * *

"(4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified."

[2] In accordance with R. C. 2941.25, the trial judge may impose sentence on only one offense when conduct can be construed to constitute two or more allied offenses of similar import. Conduct can be so construed when the offenses do not have a significance independent of each other. *State* v. *Ware* (1980), 63 Ohio St. 2d 84.

cerning his prior inconsistent sworn statement, made in or out of the presence of the accused, for the purpose of refreshing the recollection of the witness, but not for the purpose of offering substantive evidence against the accused." See, also, *State* v. *Dick* (1971), 27 Ohio St. 2d 162, 165.[3]

Defendant contends that the prosecution was not surprised by Brown's testimony. The issue of whether a party is surprised by a witness' testimony is a factual one. Our scope of review is limited and therefore we will not ordinarily review factual matters. See *Sheppard, supra.*

In *State* v. *Duffy, supra,* the court stated, at page 21, that:

"When a witness has voluntarily made a written statement, under oath, as to the existence of a state of facts, the party calling him may, in the absence of an express forewarning from the witness of an intention to repudiate it and notwithstanding knowledge of hostility, rely upon such statement and expect his testimony to be in accord therewith; and if his testimony is in direct contradiction thereto as a material fact, such party will be deemed taken by surprise as a matter of law."

There is no evidence in the record which indicates that the prosecution was expressly forewarned of Brown's intention to repudiate her earlier statements. The trial court did not err in finding that the prosecution was taken by surprise by her testimony or in allowing the prosecution to refresh her memory with her earlier statements.

We reverse the convictions of aggravated robbery and escape and reduce the conviction of three counts of aggravated murder to one count of murder in violation of R. C. 2903.02. The conviction for attempted murder remains unaltered. The judgment of the Court of Appeals is modified and the cause is remanded to the Court of Common Pleas for disposition in accordance with this judgment.

---

[3] This issue will be analyzed in appropriate future cases under Evid. R. 607, which states:

"The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Rules 801(D)(1)(a), 801(D)(2), or 803."

126

*Judgment accordingly.*

W. Brown, P. Brown and Sweeney, JJ., concur.

Locher, Holmes and C. Brown, JJ., concur in part and dissent in part.

Holmes, J., concurring in part and dissenting in part.

I concur with the majority regarding two of the three counts of which the defendant was charged and found guilty. I agree that, here, there was an absence of a showing of "prior calculation and design" in the commission of the crime of murder. The killing was, as stated by the majority, at most one of instantaneous deliberation.

I also agree that there was no arrest here, in that control of the person of the defendant by the officers did not take place. There being no arrest, there of course could be no escape upon which to base the charge and conviction of causing a death while escaping.

My disagreement with the majority lies in the charge and conviction of causing the death of Officer Burdsall while fleeing immediately after attempting to commit an aggravated robbery. In my view, the facts of this case reasonably show beyond a reasonable doubt that defendant, prior to speeding away from the King Kwik store with his companion, had been engaged in an attempted aggravated robbery. The facts brought out at trial are that David Hamler, an off-duty policeman, observed a car in the side parking lot of the King Kwik store with a man sitting in the driver's seat. Hamler then noticed another man standing at a phone booth in front of the King Kwik pretending to talk into the phone, but Hamler noticed that this man, instead of talking, was looking into the store and watching the clerk, who at the time had a considerable amount of money on the counter.

Hamler, being a trained police officer, felt that, at the time of his arrival at the store, a robbery was about to take place, and proceeded to have the clerk call the police. As the first police car arrived, the defendant hurriedly left the phone booth and headed back to the auto that had been observed in the parking lot. The auto immediately sped away. Upon the officers giving chase and stopping the auto containing the defen-

dant and his companion, Officer Burdsall was shot as he approached the stopped vehicle.

The elements forming and supporting the charge of aggravated robbery in the instant matter have been suggested by the prosecutor in his brief as follows:

"The defendant:

"1) Secured an accomplice to aid him in the crime.

"2) Procured a loaded, operable gun to use in the crime.

"3) Drove to the intended hold-up site with the gun.

"4) Parked his car in such a way as to facilitate a quick getaway.

"5) Entered a phone booth positioned to observe the clerk and cash register so that he could enter and rob at the appropriate time.

"6) Defendant fled when police arrived."

All elements being considered, a judgment finding that the defendant had, beyond a reasonable doubt, attempted aggravated robbery, and committed murder thereafter in the process of fleeing, should be affirmed.

LOCHER and C. BROWN, JJ., concur in the foregoing concurring and dissenting opinion.