OPINION
Defendant/appellant Lonelle Booker appeals his conviction for escape, R.C. 2921.34. Finding no prejudicial error, we affirm.
According to the evidence presented at trial, Booker and his friend, Jerome Reasor, arrived at the Justice Center in Cleveland, Ohio, sometime between 8:00 and 9:00 p.m. on August 13, 1997. They reportedly intended to reclaim $350.00 in bond money that Booker had posted on Reasor's behalf following the latter's arrest for possession of a quantity of marijuana. They entered the building from West 3rd Street and proceeded to cross the main lobby for the purpose of presenting themselves at the office of the clerk of courts for the Cleveland Municipal Court, which was located on the third floor of the Justice Center. Although the office of the clerk of courts was open for business 24 hours a day, it was the policy of that office to require persons arriving after 6:00 p.m. to check in at the security desk located in the main lobby and to restrict access to the third floor by admitting one customer at a time. This policy was enforced during such off-business hours by deputies employed by the county sheriff, who staffed the security desk.
Deputy Hurd observed Booker and Reasor as they approached the security desk and informed them that they would have to check in at the security desk. According to the deputies, Booker said he did not need any help and became increasingly hostile when informed that he and his friend would have to check in and be admitted one at a time. When Booker grew increasingly disruptive by screaming obscenities and racial slurs, Deputy Smith told Booker that he would have to leave the building and come back at another time. Booker apparently started to leave but continued to be vocally disruptive.
At that point, Deputy Smith told Booker that he was under arrest for disorderly conduct. Deputy Smith removed his handcuffs to arrest Booker, but Booker assumed a fighting stance. Smith returned the handcuffs to his pocket and then grabbed the light jacket Booker was wearing. (Tr. 86.) The deputy attempted to hold Booker against a pillar while Booker was pushing against him. (Tr. 86-87.) Screaming and punching, Booker hit his head on the pillar and then broke free from Deputy Smith. Booker ran toward the West 3rd Street exit doors, with Deputy Smith and others in pursuit. Several corrections officers who happened to be on break in the area observed Booker fleeing from the deputies and apprehended him.
For his part, Booker testified as follows: Deputy Smith repeatedly told Booker, "You are going to jail." (Tr. 252-253.) Booker understood that he was being arrested but insisted that the arrest was unlawful:
 Q. When [Deputy Smith] made the statement to you, what did that make you think?
A. That he was going to try to take me to jail.
Q. And that's called an arrest, correct?
A. I guess you would call it that.
Q. What do you call it?
A. I call it him unlawfully arresting me.
 Q. So you knew it to be an arrest, you just think it's. unlawful?
A. Right.
(Tr. 279-280.) According to Booker, Deputy Smith ran up and grabbed him by the jacket and shirt. (Tr. 253-254.) Deputy Smith pushed up against Booker and again told him that he was going to jail. (Tr. 254.) The deputy pushed him backwards and lifted him off the ground, at which time Booker hit his head on the pillar. (Tr. 255-256.) When Deputy Smith let go of him, Booker ran to the patio area located by the West 3rd Street exit doors, where he was apprehended. (Tr. 257-259.)
Booker was subsequently charged with one count of assaulting a peace officer, R.C. 2903.13, and one count of escape, R.C.2921.34. Booker was acquitted of the assault charge but was convicted of the escape charge.
Booker's first assignment of error contends:
 I. THE TRIAL COURT FAILED TO GIVE THE PROPER JURY INSTRUCTION REGARDING WHAT IS "DETENTION" AS USED IN R.C. 2921.34 ESCAPE.
This assignment of error is not well taken.
The trial court is required to give all jury instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. State v. Joy(1995),74 Ohio St.3d 178, 181; State v. Comen(1990), 50 Ohio St.3d 206, syllabus at paragraph 2. Special instructions that are correct, pertinent, and timely presented must be included, at least in substance, in the general charge. State v. McCarthy(1992),65 Ohio St.3d 589, 593; State v. Jacobs(1995), 108 Ohio App.3d 328,334. But the instructions must be viewed in the context of the overall charge rather than in isolation. See State v. Lewis
(1993), 67 Ohio St.3d 200, 203; State v. Price(1979), 60 Ohio St.2d 136, syllabus at paragraph 4. If the general instructions fully and fairly cover the substance of the special instruction, the court may refuse to give the requested special instruction. See State v. Brumback(1996), 109 Ohio App.3d 65, 74-75; State vBarnd(1993), 85 Ohio App.3d 254, 259. Moreover, trial courts are discouraged from amplifying statutory definitions and have been admonished to "limit definitions, where possible, to those definitions provided by the legislature in order to avoid unnecessary confusion and needless appellate challenges." State v.Williams(1988), 38 Ohio St.3d 346, 356, n. 14. See also State v.Williams(1996), 117 Ohio App.3d 488, 495; State v. Jacobs, supra,108 Ohio App.3d at 334.
In the instant case, the trial court's initial jury charge on the law of "escape" instructed as follows:
 The defendant is also charged with the crime of escape. Before you can find the defendant guilty of the crime of escape, you must find beyond a reasonable doubt that on or about the 13th day of August, 1997, and in Cuyahoga County, Ohio, the defendant, knowing that he was under detention, or being reckless as to knowledge that he was under detention, that he purposely broke or attempted to break that detention.
 Now, purpose is an essential element of the crime of escape. A person acts purposely when it is his specific intention to cause a certain result. In other words, escape must be established in this case that at the time in question, there was present in the mind of the defendant a specific intention to escape.
(Tr. 371-372.)
After delivering this initial jury instruction, the court asked the parties whether they had anything to add. Booker's counsel requested, among other things, that the court additionally instruct that a "person is under detention, as the term is used in R.C. 2923.34, when he's arrested and the arresting officer has established control over his person," citing State v. Reed(1981).65 Ohio St.2d 117. (Tr. 383.) The court then supplemented its jury instructions in part as follows: "When a person is under detention, as that term is used in connection with this case, when he's under arrest, detention and arrest mean the same thing." (Tr. 385.)
After the court concluded its supplemental instructions, Booker's counsel objected and asked to approach the bench, but the court denied that request, directed Booker's counsel to explain the objection later, and excused the jury to begin deliberations. (Tr. 385.) Once out of the jury's presence, Booker's counsel renewed his objection to the "detention" instruction:
 MR. MIDDLETON: The case law is clear, it indicates there must be control of the person by the deputy, and that was not given to the jury in this case. We would ask that instruction further be given to the jury.
 THE COURT: It's overruled. The jury now has the case.
(Tr. 386.)
After a period of jury deliberations, the jury reported that it had two questions, one of which concerned the escape charge. [1]
Responding to those questions, the pertinent transcript excerpt reflects the following:
 Second question: "Definition of arrest/detention. For example, when is a person considered under arrest? When does the person have to be read his rights?"[2]
 Arrest means that a person is stopped. He's stopped to be held, to answer for some sort of an accusation, whatever it might be, whether it's a traffic stop or whatever else. When a person is stopped, a person is technically under arrest. After he was stopped, when he is told he's under arrest. And detention simply means arrest.
 So a person is considered under arrest when he's told that he's under arrest.
(Tr. 403-404.) The court then informed the jury that it was unnecessary to instruct them on the law concerning the reading of rights because that was not in issue in this case.
Booker challenges the correctness of the court's "escape" instructions. The offense of "escape" is established by R.C.2921.34(A)(1), which recites:
 No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose of limited period, or at the time required when serving a sentence in intermittent confinement. (Emphasis added.)
R.C. 2921.01(E) defines "detention" to mean, among other things, "arrest."
In considering the jury instructions as a whole, we believe the court's charge sufficiently defined the elements necessary to establish the offense of escape as defined under the applicable Ohio statutes. Booker maintains that the court's instruction was deficient based on the syllabus law of State v. Reed (1981),65 Ohio St.2d 117, which states: "A person is under "detention," as that term is used in R.C. 2921.34, when he is arrested and thearresting officer has established control over his person."
(Emphasis added.) We do not agree that it was necessary to include the additional Reed syllabus language in the court's escape charge for this case.[3]
A similar claim was rejected in State v. Van Meter(Apr. 10, 1992), Huron App. No. H-91-025, unreported. In that case, a police officer recognized the defendant sitting on the passenger side of a parked vehicle and was aware that there was an outstanding bench warrant for the defendant's arrest. The officer approached the car, informed the defendant of the warrant and that he was under arrest, and ordered the defendant to step out of the car and to place his hands on the hood. During the course of a pat down search for weapons, the defendant suddenly fled. He was apprehended two months later and was charged with escape. The trial court overruled the defendant's request for a jury instruction using the Reed syllabus. The court of appeals held that it was not error to refuse the requested instruction because the defendant knew he was being arrested and thus understood that he was in legal custody. The appellate court explained:
 Both police officers testified that appellant was placed under arrest. More importantly, appellant testified that he knew he was under arrest and that [the police officer] had control over him. Consequently, it is undisputed that appellant was under arrest. The court did not abuse its discretion in rejecting defense counsel's proposed jury instruction * * *.
State v. Van Meter, supra, at **2.
Similarly, the evidence in this case reflected that Booker understood that he was under arrest when Deputy Smith told Booker that he was going to jail and thereafter placed his hands on Booker to effectuate the arrest. An "arrest" occurs when there is an intent to arrest under real or pretended authority, accompanied by an actual or constructive seizure of detention of the person which is so understood by the person arrested. State v. Barker(1978),53 Ohio St.2d 135, syllabus at paragraph 1, cert. denied,439 U.S. 913. The facts of Booker's encounter make clear that there was an intent to arrest by one with authority to do so, as well as an actual seizure, which Booker understood meant that he was under arrest. Under these facts, it was sufficient for the court to instruct that a person is under detention when he is under arrest.
The facts of this case are distinguishable from State v. Reed,supra, in which the defendant shot and killed police officer approaching for the purpose of investigation. These facts are likewise distinguishable from State v. Magnuson(1981), 2 Ohio App.3d 21, in which the defendant was being chased by the police but had not been seized by the police.
The cumulative charge given by the court was sufficient for this case. Booker's first assignment of error is therefore overruled.
Booker's second assignment of error states:
 II. THE COURT'S OVERRULING OF DEFENDANT'S RULE 29 MOTIONS IS REVERSIBLE ERROR.
"Pursuant to Crim.R. 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Bridgeman(1978), 55 Ohio St.2d 261, at syllabus. InState v. Jenks(1991), 61 Ohio St.3d 259, paragraph 2 of the syllabus instructs:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Booker's appeal contends that he was entitled to an acquittal because the evidence was insufficient to establish that he escaped from "detention" under the syllabus law of State V. Reed, supra, which held: "A person is under `detention,' as that term is used in R.C. 2921.34, when he is arrested and the arresting officer hasestablished control over his person." (Emphasis added.) We do not agree with Booker's understanding or application of this principle to the facts of this case.
The courts have generally equated "detention" under R.C.2921.01(E) with the condition of being in legal custody. See Statev. Diodati(1991), 77 Ohio App.3d 46; State v. Shook(1975),45 Ohio App.2d 32. The "control" necessary to establish detention may involve but does not require actual physical restraint. State v.Davis(1992), 81 Ohio App.3d 706, 720; State v. Shook, supra,45 Ohio App. 2d at 34-35. Control may be established either "by police exertion of control over the person" or "by the surrender or submission by the person." State v. Jackson(1992), 83 Ohio App.3d 298,299-300. The mere exertion of control is sufficient to constitute detention.
One who has been arrested is considered under "detention." R.C. 2921.01(E). As we previously noted, an "arrest" occurs when there is an intent to arrest under real or pretended authority, accompanied by an actual or constructive seizure of detention of the person which is so understood by the person arrested. State v.Barker, supra.
The defendant may therefore be considered under "detention" when he is told by a law enforcement officer that he is under arrest and understands that he is not free to leave. Thus in Statev. Davis, supra, the defendant was not free to leave when he fled before signing a recognizance bond following his arrest for driving while intoxicated. See also In re James W.(May 16, 1997), Erie App. No. E-96-051, unreported (defendant in custody after acknowledging that he was going to jail and placing hands behind back for handcuffs); State v. Stepp(Mar. 4, 1997), Ross App. No. 96 CA 2205, unreported (defendant in custody when told that he was under arrest and directed to remain in courtroom with officer) ; State v. Roof (Dec. 21, 1995), Henry App. No. 7-95-4, unreported (defendant in custody when told that he was under arrest and escorted to patrol car)
By contrast, the defendant in State v. Reed, supra, was not yet in custody when the defendant shot and killed a police officer who approached to investigate a car and, with gun drawn, had only ordered the defendant out of the car. Likewise, the defendant inState v. Claytor(1991), 61 Ohio St.3d 234, had not even been placed under arrest before he shot and killed two security guards. In State v. Jackson, supra, the police did not exert control over the defendant, and he did not surrender or submit to police authority. The defendant in State v. Huffman(1987), 38 Ohio App.3d 84, was not even charged with escape.
In the case at bar, a rational trier of fact could find (1) that Booker was arrested when Deputy Smith told him that he was going to jail and the deputy removed his handcuffs to effectuate the arrest and (2) that Booker was in custody when Deputy Smith placed his hands on Booker to apprehend him as Booker took on a fighting stance. Booker's subsequent attempt to run from police custody could be found to be the breaking of detention. Construing the evidence as we must, we find sufficient evidence in this record to sustain Booker's escape conviction. The second assignment of error is overruled.
Booker's third assignment of error states:
 III. DENIAL OF A CONTINUANCE REQUESTED FOR REVIEW OF PROSECUTOR'S RESPONSE TO DISCOVERY PURSUANT TO CRIMINAL RULE 16 IS AN ABUSE OF DISCRETION.
This assignment of error is not well taken.
Booker's appeal complains that the state failed to provide in writing the names and addresses of its witnesses. In State v.Heinish(1990), 50 Ohio St.3d 231, the court's syllabus states:
 In the event the state withholds the name and address of a witness, Crim.R. 16(E)(3) provides for the admissibility of the testimony of the witness if it can be shown that the failure to provide discovery was not willful, foreknowledge of the statement would not have benefitted the defendant in the preparation of the defense, and the defendant was not prejudiced by the admission of the evidence.
See also State v. Otte(1996), 74 Ohio St.3d 555, 563; State v.Stoudemire(1997), 118 Ohio App.3d 752. If there has been a discovery rule violation, the trial court is required to impose the least severe sanction that is consistent with the purpose of the discovery rules. Lakewood v. Papadelis(1987), 32 Ohio St.3d 1. We review the trial court's ruling for abuse of discretion. StateV. Soke(1995), 105 Ohio App.3d 226.
The record in this case reflects that after unsuccessful plea negotiations that occurred throughout the morning of the scheduled trial date, Booker's counsel made an oral request to continue the trial initially in order to bring in additional witnesses on Booker's behalf. (Tr. 5.) When that request was denied, and as a prospective jury was about to be empaneled, Booker's counsel apparently submitted an affidavit of bias and prejudice against the trial judge. (Tr. 14.) That document was not filed according to law and was deemed to be an ineffective attempt to continue the trial.
As the court was about to bring in a prospective jury, Booker's counsel again sought a trial continuance but now on grounds of a claimed lack of discovery. (Tr. 15.) The court denied that request after noting that Booker had not been prevented from obtaining discovery by the prosecutor at any time, the prosecutor had identified all the state's prospective witnesses, and the prosecutor remained willing even at that time to provide any discovery. (Tr. 15-16.) The prosecutor further noted that the matter had been subject to several pre-trials at which time any discovery issues were or could have been addressed and resolved.
On this record, Booker has not demonstrated that the court abused its discretion. Booker has not shown that any witness's identity was withheld willfully, as was the case in State v. Smith
(1986), 34 Ohio App.3d 180, or that any statements would have benefitted him, or that he suffered any prejudice. Booker complains that the state did not disclose any oral statements Booker supposedly made to a triage nurse at the hospital, but Booker does not explain the significance, if any, of the statements and the triage nurse did not testify in any event.
We find no abuse of discretion under the circumstances of this case. The third assignment of error is overruled.
The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE. P.J., and
ANNE L. KILBANE. J., CONCUR.
 _________________ DIANE KARPINSKI JUDGE
[1] According to the transcript, the court attempted unsuccessfully to locate Booker's counsel. (Tr. 401.) The court stated that it was responding to the jury's questions in the absence of Booker's counsel rather than have the jury wait because Booker's counsel reportedly did not leave instructions as to how he could be contacted and did not authorize anyone else to substitute for him in his absence.
[2] The jury's written question on this issue, included in the record before us, states: "2. Definition of arrest/detention — for example, when is a person considered under arrest, (at what point is a person considered under arrest?) When does the person have to be read his rights?"
[3] We note that the standard charge approved by the Ohio Judicial Conference and published in its Ohio Jury Instructions, Section 521.34, does not include an instruction that requires an arresting officer to establish control over the person. Under the standard instruction, the element for breaking detention is said to be "[t]he termination of the status of being in legal custody, either with or without the use of force."