JOURNAL ENTRY AND OPINION.
{¶ 1} A jury found defendant Leroy Williams guilty of aggravated murder with a firearm specification and having a weapon while under disability. The state's evidence showed that he killed another man after a confrontation. The assignments of error challenge the weight and sufficiency of the evidence supporting the conviction, as well as the sentences imposed.
 I {¶ 2} The first assignment of error complains that the court erred by denying Williams' motion for judgment of acquittal on the aggravated murder charge because the state failed to present sufficient evidence that he acted with prior calculation and design.
 {¶ 3} The court may only grant a Crim.R. 29(A) motion for judgment of acquittal if the evidence is insufficient to sustain a conviction on the charged offenses. In determining whether the evidence is sufficient, the court must consider the evidence in a light most favorable to the state and ask itself if reasonable minds could reach different conclusions as to whether each material element of an offense has been proven by a reasonable doubt. See State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. If reasonable minds can differ on the evidence, a motion for judgment of acquittal cannot be granted.
 {¶ 4} R.C. 2903.01(A) states, "No person shall purposely, and with prior calculation and design, cause the death of another." In State v.Stoudemire (1997), 118 Ohio App.3d 752, 758, we stated:
 {¶ 5} "The term `prior calculation and design' is not defined by the Revised Code, but is generally understood to encompass the calculated decision to kill. State v. Robbins (1979), 58 Ohio St.2d 74, paragraph one of the syllabus. Instantaneous deliberation is insufficient to constitute prior calculation and design. State v. Cotton (1978),56 Ohio St.2d 8, paragraph two of the syllabus. But the amount of care and the length of time the offender takes to ponder the act are not critical factors in themselves in determining prior calculation and design. State v. O'Neal (Sept. 22, 1994), Cuyahoga App. No. 65260, unreported, at 14, citing Legislative Service Commission Comment to R.C.2903.01.
 {¶ 6} "Prior calculation and design may be shown by evidence revealing the presence of sufficient time and opportunity for planning the act of homicide. Robbins, supra; Cotton, supra, at paragraph three of the syllabus."
 {¶ 7} The state presented the testimony of five different witnesses who saw Williams shoot the victim. The evidence showed that on the day of the murder, the victim had been walking with a woman near Williams' house. Williams and the victim exchanged words. Later, as Williams sat on the front porch of his house with a friend, they discussed the incident. The friend testified that Williams produced a chrome-plated revolver and showed it to him. That evening, as Williams sat on his front steps, surrounded by friends, neighbors and acquaintances, he saw the victim walk by. In the hearing of some of the witnesses, Williams said "there's that motherfucker that said something to me earlier * * *." He stood up and approached the victim saying, "hey, motherfucker, what did you say to me earlier? Why don't you say that shit now." The victim continued to walk, saying that he didn't know Williams. Williams ran from the porch and confronted the victim. One of the neighbors tried to end the confrontation, repeating to Williams that the victim said he did not know Williams. Williams then spat on the victim and ran to house. The victim began taking off his coat in preparation to fight. Williams quickly emerged from the house with a gun that he held close to his side so that the victim could not see it. When he stood three to four feet from the victim, Williams fired the gun. The bullet struck the victim in the lung and heart. A witness said that the victim's last words were "I told you I don't even know you * * *."
 {¶ 8} Reasonable minds could find that the state established sufficient proof of prior calculation and design. After exchanging words with the victim, Williams showed off a gun and then, after seeing the victim later that evening, suggested that the victim repeat his words. This suggested that Williams intended to back up his words with the use of the gun. The evidence showed that Williams alone provoked the situation — the victim kept repeating that he didn't know Williams and merely wished to continue on his way. The manner in which Williams entered the house and quickly emerged with the gun, wordlessly shooting the victim at close range suggested that the decision to kill had been made before he entered the house to get the gun. Although this was a brief period of time, a reasonable trier of fact could find, in light of all the circumstances, that Williams formed a calculated decision to kill. Because reasonable minds could differ on the evidence, the court did not err by denying the motion for judgment of acquittal on the aggravated murder charge.
 II {¶ 9} Williams next argues that his conviction for aggravated murder is against the manifest weight of the evidence. Williams' argument states, in its entirety: "Here, the jury simply lost its way as to the Aggravated Murder conviction. As stated under Assignment of Error I, there is not the requisite evidence for a conviction of Aggravated Murder." App.R. 16(A) requires a party to separately argue an assignment of error. Simply telling the court of appeals that the jury "lost its way," without any further elaboration, is insufficient under the rule. We summarily overrule this assignment of error.
 III {¶ 10} The state charged Williams with having a weapon while under disability. The court bifurcated this count and considered it out of the hearing of the jury. When finding Williams guilty of the count, the court stated, "the Court finds beyond a reasonable doubt the defendant guilty of carrying a concealed weapon under a disability, felony of the fifth degree." Williams argued that the court erroneously injected language relating to a concealed weapon into the charge.
 {¶ 11} There is no doubt in our minds that the court simply misspoke when it added the concealed weapon language to the weapons disability charge. The court's entry memorializing William's judgment of conviction correctly states the offense as having a weapon under disability, without the surplusage relating to carrying a concealed weapon. And since the court speaks only through its journal and not by oral pronouncement, Schenley v. Kauth (1953), 160 Ohio St. 109, any misnomer by the court had no legal effect whatsoever.
 {¶ 12} Williams also maintains that there was no evidence to support the court's finding relating to the prior offense giving rise to the disability. During the court's deliberation on the disability count, it recalled that the defense had stipulated to the prior conviction. Williams was represented by cocounsel, and only one member of the defense team was present at the time of sentencing. That counsel stated, "Oh, did he stipulate? I'm sorry. If he stipulated then I didn't hear it." The court replied, "it was stipulated." Counsel replied, "okay." The court noted that it was in possession of Williams' record and could go through it, but counsel said, "No, your Honor, that's okay. I just didn't know that there was a stipulation on it." This exchange was sufficient to show a stipulation.
 IV {¶ 13} The defense asked the court to instruct the jury on the lesser included offense of voluntary manslaughter. The court refused the instruction after considering that there had been no provocation by the victim.
 {¶ 14} In State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, the court stated at ¶ 73:
 {¶ 15} "Voluntary manslaughter is an inferior degree of aggravated murder. State v. Tyler (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576. It is not, however, a lesser included offense of aggravated murder. Statev. Shane (1992), 63 Ohio St.3d 630, 590 N.E.2d 272. It consists of knowingly causing a death `while under the influence of sudden passion or in a sudden fit of rage, * * * brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the [offender] into using deadly force * * *.' R.C. 2903.03(A)."
 {¶ 16} Since voluntary manslaughter is not a lesser included offense of aggravated murder, the court could not validly give the instruction and therefore did not err by refusing to do so.
 {¶ 17} Moreover, there were no facts to justify an instruction on voluntary manslaughter. There was no evidence that the victim seriously provoked Williams and that the serious provocation was reasonably sufficient to have incited Williams' use of deadly force. All the evidence showed that Williams provoked the incident and that the victim tried to continue on his way, having repeatedly stated to Williams that he did not know him.
 V {¶ 18} Williams next argues that the court erred by ordering his sentences for aggravated murder with a firearm specification and having a weapon under disability to be served consecutively because the offenses are allied offenses under R.C. 2941.25.
 {¶ 19} The flaw with Williams' argument is that he equates a firearm specification with a separate offense. In State v. Willingham
(Feb. 16, 1988), Cuyahoga App. Nos. 54767 and 56464, we stated:
 {¶ 20} "A criminal defendant may not receive multiple punishments when `the same conduct by defendant can be construed to constitute two or more allied offenses of similar import * * *.' R.C. 2941.25(A). However, it is settled law in this district that the specification contained in R.C. 2929.71 is a sentencing provision, not a separate offense; thus, the specification cannot be an allied offense. State v. Loines (1984),20 Ohio App.3d 69, 72-73; State v. Price (1985), 24 Ohio App.3d 186, 187-189." (Citations omitted.)
 {¶ 21} Because the gun specification is not a separate offense, it may not be allied with another offense for sentencing purposes.
 VI {¶ 22} The remaining arguments concern the court's order that Williams receive the one-year maximum sentence under the weapons disability count and that the sentence run consecutive to the sentence for aggravated murder.
 A {¶ 23} The court may impose a maximum sentence only upon those offenders who, as applicable here, committed the worst forms of the offense or who pose the greatest likelihood of committing future crimes. See R.C. 2929.14(C). Not only must the court make one of these findings, but it must also state its reasons for making that finding. State v.Edmonson (1999), 86 Ohio St.3d 324, 329, 1999-Ohio-110.
 {¶ 24} We have held that when stating a finding to support a maximum sentence, the court need not use any special or magic words. SeeState v. Smith (2000), 136 Ohio App.3d 343, 350. Although the court did not specifically state that the disability charge was the worst form of the offense, it did note that "this is one of the most senseless — there is [sic.] no words in the english [sic.] language to describe the outrage I feel in my heart and sole [sic.] for this type of utter, ridiculous, horrific killing." This statement is sufficient to convey that the court found that Williams committed the worst form of the offense. While Williams may argue that these words were spoken in reference only to the aggravated murder count, we believe that taken as whole, they relate to all the counts in a manner sufficient to fulfill the court's obligation during sentencing.
 B {¶ 25} R.C. 2929.14(E)(4) provides that consecutive sentences may be imposed if (1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one of the following applies: (a) the offender committed the offenses while awaiting trial or sentencing, under sanction or under post-release control; (b) the harm caused by the multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offense; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. Additionally, R.C. 2929.19(B)(2)(c) requires the trial court to state its reasons for imposing consecutive sentences.
 {¶ 26} The court made the required findings. It found that Williams posed a danger to the public and that the sentences were not disproportionate to the crime. The court also found that Williams' act of shooting an innocent person for no reason would indicate that he was a threat to the public because he would again commit a crime. These findings and reasons were sufficient to impose consecutive sentences.
PATRICIA ANN BLACKMON, J., and JAMES J. SWEENEY, J., CONCUR.