The STATE of Ohio, Appellee,

v.

HUBBARD, Appellant.

[Cite as *State v. Hubbard,* 150 Ohio App.3d 623, 2002-Ohio-6904.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 01 JE 4.

Decided Dec. 12, 2002.

Bryan Felmet, Jefferson County Prosecuting Attorney, and Anthony Battista III, Assistant Prosecuting Attorney, for appellee.

Gerald Latanich, for appellant.

VUKOVICH, Presiding Judge.

{¶ 1} Defendant-appellant Willie Hubbard appeals from his conviction in the Jefferson County Common Pleas Court of complicity to commit murder, attempted murder, felonious assault, and aggravated riot. Hubbard raises a number of issues in this appeal. First, this court must determine whether the state had the authority to impeach one of its own witnesses. The second issue is whether Hubbard was denied effective assistance of counsel. The third issue is whether after the mistrial, reprosecution was barred by double jeopardy. The final issue is whether the state presented sufficient evidence to convict Hubbard of complicity to commit murder, attempted murder, and felonious assault. For the reasons stated below, the decision of the trial court is affirmed.

## STATEMENT OF FACTS

{¶ 2} On November 22, 1997, there was a party at 635 Logan Street, Steubenville, Ohio. Hubbard attended this party. At the party were several members of the gang known as the Crips. It is contested whether Hubbard is a member of the Crips. During that evening, Wise God Allah, a.k.a. Grier Montgomery, was walking down the street outside of the party. Wise God Allah was known to be a member of the rival gang the Bloods. Hubbard and up to nine other men began shooting at Wise God Allah. One of the shots hit Wise God Allah. The gunshot wound was fatal.

{¶ 3} As a result of these events, Hubbard was indicted on five felony counts: having weapons while under a disability, murder with a gun specification, attempted murder with a gun specification, felonious assault with a gun specification, and aggravated riot with a gun specification. Hubbard pleaded not guilty and proceeded to trial.

{¶ 4} The first trial resulted in a mistrial. During the testimony of Detective John Lelless, one of the state's witnesses, the detective referred to Hubbard's criminal history. By order of the trial court, criminal history had been excluded from the trial. Hubbard moved for a mistrial. The trial court granted the motion.

{¶ 5} As a result of the mistrial, Hubbard filed a motion to dismiss based on double jeopardy. Hubbard argued that the state had deliberately induced the mistrial because the state was unhappy with the way the case was proceeding.

The state maintained that there was a gap in communication and understanding between Detective Lelless and Assistant Prosecutor Becker and therefore the mistrial had not been intentionally induced. The trial court overruled the motion to dismiss. Hubbard appealed that denial to this court. *State v. Hubbard* (1999), 135 Ohio App.3d 518, 734 N.E.2d 874. We dismissed the appeal because the denial of a motion to dismiss based on double jeopardy grounds is not a final appealable order.

{¶ 6} The second trial commenced on March 7, 2001. The charges brought in the second trial were murder with a gun specification, attempted murder with a gun specification, felonious assault with a gun specification, and aggravated riot with a gun specification. The jury found Hubbard guilty on all four counts and all gun specifications. Hubbard received a net sentence of 19 years to life in prison. Hubbard timely appeals the conviction.

## ASSIGNMENT OF ERROR NO. ONE

{¶ 7} Hubbard raises seven assignments of error, the first of which contends:

{¶ 8} "The plaintiff [sic] was denied a fair trial under the Fourteenth Amendment, Article I § 16 of the Ohio Constitution, and the Sixth Amendment Confrontation Clause by allowing the prosecutor reading a prior inconsistent statement of the witness to the jury in an attempt to impeach the witness."

{¶ 9} One of the state's witnesses was Darl Keith West. West entered into a plea agreement with the state concerning his connection with the Wise God Allah shooting. West pleaded guilty to attempted murder with a gun specification and received a net sentence of 7 years. Shortly after the shooting, West gave a written statement to the police. In West's testimony during the second trial, he denied or could not recall the statement he had made to police concerning the Wise God Allah shooting. In response to the denial and failure to recall, the state attempted to use the statement to impeach West. The state asked numerous questions to determine whether West disavowed his entire statement. Later in the trial, the state moved to admit into evidence the prior statement to police. After discussions, the trial court took the matter under advisement. Prior to the trial court's ruling, the state withdrew the request to admit the prior statement to police into evidence.

{¶ 10} Evid.R. 607 states that a party cannot impeach its own witness with a prior inconsistent statement without showing surprise and affirmative damage. This limitation was intended to prevent the circumvention of the hearsay rule. *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576. Without the requirement of surprise and affirmative damage, a party could call a witness only for the purpose of disclosing the prior inconsistent statement, i.e., hearsay,

to the jury. *State v. Lewis* (1991), 75 Ohio App.3d 689, 695, 600 N.E.2d 764. The element of surprise is proved when the testimony is materially inconsistent with the prior statement and counsel did not have reason to believe that the witness would change his or her testimony. *Dayton v. Combs* (1993), 94 Ohio App.3d 291, 299, 640 N.E.2d 863, citing *State v. Reed* (1981) 65 Ohio St.2d 117, 19 O.O.3d 311, 418 N.E.2d 1359. It is within the trial court's discretion to determine whether a party is taken by surprise. *Ferguson Realtors v. Butts* (1987), 37 Ohio App.3d 30, 523 N.E.2d 534. Affirmative damage is established only when the party's own witness testifies to facts that contradict, deny, or harm that party's trial position. Id. Affirmative damage is not shown where the witness denies knowledge of the facts or states that he or she does not remember the facts stated in the prior statement. Evid.R. 607 staff note.

{¶ 11} The parties dispute whether the second element, affirmative damage, is present. Hubbard contends that he was prejudiced by the trial court's allowing the state to ask numerous questions concerning the prior statement to police when the trial court found no affirmative damage. However, the trial court never determined whether the affirmative-damage element was proved. The state withdrew its request to have the statement admitted before the trial court ruled on the issue. Despite Hubbard's erroneous contention about the affirmative-damage finding, his core argument is that the trial court allowed the state to repeatedly ask West about the prior statement to police in the presence of the jury. These questions and answers set forth all the information that was in the statement. Therefore, according to Hubbard, the state was circumventing the hearsay rule.

{¶ 12} The trial court did not err by allowing the state to ask questions concerning West's prior statement to police. During West's testimony, his almost immediate response to any question was either "I don't recall that" or "if you don't recall it, it never happened." The state was surprised by these responses and wished to show affirmative damage to impeach the credibility of its own witness. The state asked whether West recalled telling police that Hubbard pulled out a gun and pointed the gun at a truck. After about a transcript page of questions on this, Hubbard objected. Hubbard stated that it appeared that this was enough to disavow the prior statement; however, the trial court stated that more of the foundation needed to be laid to use it later. The trial court allowed the questioning to continue. The state questioned West on Hubbard's having a gun and shooting at Wise God Allah. The state also asked questions concerning West's shooting at Wise God Allah and the number of shots fired. The trial court stopped the questioning at this point after about two pages of questions because both sides agreed that West had disavowed his prior statement. It appears that

it is the extent of the questions on pages 244–245 of the transcript in which Hubbard finds error.

{¶ 13} Some type of foundation had to be shown to determine whether West's testimony was damaging to the state. As stated earlier, in determining affirmative damage, a response of "I don't recall," which is a neutral response, is not enough for damage. *Lewis*, 75 Ohio App.3d at 697, 600 N.E.2d 764. Instead, the statement must be contradictory or harming the state's trial position. Id. West's testimony is confusing. In some of his answers, West simply responds, "I don't recall that," while other responses are "I don't recall it, so it never happened." Saying that Hubbard never had a gun and did not shoot at Wise God Allah would be damaging to the state's case because it is contradictory to the state's case. *State v. Davie* (1997), 80 Ohio St.3d 311, 323, 686 N.E.2d 245 (stating that affirmative damage was done where the state's position was that appellant was solely responsible and the state's witness testified that appellant was threatened so as to take the responsibility for the crime by a third party who was really responsible). However, not recalling who has a gun is not damaging. Therefore, the determination of whether the answer "I don't recall" meant "I don't recall" or "No, that never happened" became imperative to determine whether affirmative damage occurred. The trial court did not err in allowing the extended questioning.

{¶ 14} The state argues that regardless of whether there were too many questions to lay a foundation for affirmative damage, there was affirmative damage. West stated twice that if you don't recall something it never happened. West made this statement in reference to his recollection of his previous written statement to the police and to his knowledge of whether Hubbard had a gun. When asked whether Hubbard shot at Wise God Allah, West answered that he couldn't recall. However, West testified at the second trial that he did not see whether Hubbard had a gun. This is inconsistent with his previous testimony and the statement. West entered into a plea bargain with the state and received a lesser sentence than he might have otherwise in the absence of his cooperation. The state expected that West would testify in accordance with his prior version of the facts, which had won him a favorable plea bargain. *State v. Cupe* (Feb. 18, 1999), 10th Dist. No. 98AP–64, 1999 WL 77219. In fact, West previously testified to the plea-bargain version of the facts and had provided a sworn statement of those facts. When subsequent testimony is materially inconsistent with prior testimony, the state has the right to impeach its own witness. Id.

{¶ 15} Even if West's subsequent testimony did not rise to the level of affirmative damage, allowing the state's extended questions on this subject amounted to harmless error. Reviewing courts, in determining whether the state could impeach its own witnesses, have turned their analysis towards harmless

error after they have found that the state did not prove both the surprise and affirmative-damage elements. *State v. Lewis* (1991), 75 Ohio App.3d 689, 697, 600 N.E.2d 764 (finding that it could not be considered harmless error); *State v. Perez* (1991), 72 Ohio App.3d 468, 474, 594 N.E.2d 1041 (finding that it could not be considered harmless error because the state's continued leading questions implied that the witness had been persuaded to change testimony); *State v. Blair* (1986), 34 Ohio App.3d 6, 516 N.E.2d 240 (holding that error was harmless because of testimony of five other witnesses and overwhelming evidence of guilt).

{¶ 16} In the case at hand, one other state's witness, Kori Henry, testified that Hubbard had a gun on the night of the Wise God Allah shooting. Henry further testified that prior to the shooting, Hubbard cocked the gun and left the house with other men with guns. Another state's witness, Connie Coles, stated that Hubbard had a gun and came back into the house with the gun along with other men after the shooting. Furthermore, the state read West's prior testimony from the first trial into the record. (See second assignment of error.) The prior testimony and the prior statement to police are consistent with each other. They offer the same information. Therefore, even if affirmative damage could not have been established, any questions concerning the prior statement to police were harmless. The information in the statement was already properly before the jury through the prior testimony. (See second assignment of error.) Therefore, this assignment or error lacks merit.

## ASSIGNMENT OF ERROR NO. TWO

{¶ 17} "The defendant's right to a fair trial under the Fourteenth Amendment and adequate assistance of counsel and right to confront under the Sixth Amendment were violated by improper admission into evidence of hearsay statements of Darl Keith West."

{¶ 18} After the state questioned West on his statement to the police, the state questioned him on his prior testimony in the first trial. Hubbard objected to the introduction of the prior testimony. The trial court admitted the testimony under Evid.R. 804.

{¶ 19} Hubbard argues that West's testimony at the first trial was hearsay and was inadmissible at the second trial. The state contends that the prior testimony was not hearsay under either Evid.R. 804 or 801(D)(1).

{¶ 20} Evid.R. 804 is a list of exceptions to the hearsay rule. Before a statement can fall under these exceptions, the statement must be hearsay. Evid.R. 804. Evid.R. 801 defines statements that are and are not hearsay. West's prior testimony is not hearsay as defined under Evid.R. 801(D)(1)(a). Evid.R. 801(D)(1)(a) reads as follows:

{¶ 21} "(D) Statements which are not hearsay

{¶ 22} "A statement is not hearsay if:

{¶ 23} "(1) Prior statement by witness. The declarant testifies at the trial * * * is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with his testimony and was given under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition * * *."

{¶ 24} This rule can be divided into four elements. First, the declarant must testify at the trial. The declarant in this case is West. The term "trial" in this element means the second trial. West did testify at the second trial. Therefore, the first element is met.

{¶ 25} The second element is that the declarant was subject to cross-examination concerning the statement. In this case, the statement that the proponent is trying to show to be nonhearsay is the testimony from the first trial. West was subject to cross-examination during the second trial concerning the testimony from the first trial. Hubbard did not cross-examine West, but he did have the opportunity. Therefore, the second element is proved.

{¶ 26} Third, the statement must be inconsistent with the testimony. Therefore, West's testimony at the first trial must be inconsistent with his testimony at the second trial. West testified that if his testimony in the first trial was consistent with his statement to police it was incorrect. West's testimony began with his answering questions about arriving at the party on Logan Street. He did state that he saw Hubbard at the party. When asked if he recalled seeing Hubbard do anything, he answered no. When asked who had a gun, his only response was himself and that he did not know if anyone else had a gun. The state questioned West about his prior testimony in the first trial. He stated that he did not recall testifying. Then he added, "What I'm saying is I don't—none of it happened. '98 is '98." The above statements are inconsistent with his prior testimony, which detailed the shooting of Wise God Allah and Hubbard's involvement. See *State v. Cupe* (Feb. 18, 1999), 10th Dist. No. 98AP–64.

{¶ 27} The final element is that the prior statement was made under oath, subject to cross-examination, and subject to the penalty of perjury. West's first statement was made at trial. Therefore, it was made under oath, subject to cross-examination, and subject to the penalty of perjury. Thus, the fourth element is proved. The testimony from the first case is not hearsay as it is defined by Evid.R. 801(D)(1)(a).

{¶ 28} Hubbard argues one additional point under this assignment of error: that the state did not allow West to testify about the incident as he remembered

it. This argument lacks merit. The state did allow West to testify about the incident, before trying to impeach West. The state allowed West to testify for almost four pages of transcript before it tried to impeach him with the prior statement and testimony. West testified that he had a gun, he shot at Wise God Allah, he did not see anyone else with a gun, and he did not see whether Hubbard had a gun. Thus, West was permitted to testify as to the events of that night prior to the state's attempt to impeach him. Accordingly, this assignment of error appears to lack merit.

## ASSIGNMENT OF ERROR NO. THREE

{¶ 29} · "The defendant's right to a fair trial under the Fourteenth Amendment was violated by placing *only* the typed transcript of Darl Keith West with the jury." (Emphasis sic.)

{¶ 30} After the trial court had determined that West's prior testimony was admissible, the trial court admitted the transcript of that testimony as State's Exhibit 34. The transcript was submitted to the jury without objection by Hubbard. Hubbard argues that the trial court committed reversible error by submitting the transcript of the prior testimony to the jury.

{¶ 31} Without a formal objection, Hubbard waives all but plain error on review. Plain error is only found where, "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Scott* (Sept. 28, 2001), 7th Dist. No. 99CA324, 2001 WL 1867806, citing *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.

{¶ 32} Hubbard cites the Twelfth District Court of Appeals for the proposition that admitting the transcript of the prior testimony into evidence for the jury's consideration is reversible error. *State v. Welling* (Nov. 18, 1985), 12th Dist. No. CA85–07–079, 1985 WL 3689 (raising error for the first time at trial, not on appeal). The Twelfth District reasoned that no other witnesses' testimony was transcribed and submitted in written form to the jury. The court worried that undue weight could be given to the written testimony as opposed to the oral testimony, which would have to be required to be recalled from memory. However, the appellate court's ruling that this was reversible error was not based solely on the admission of the written transcript to the jury. The ruling was based upon the unavailability of the witness, the admission of the written prior testimony to the jury, and the fact that there was conflicting testimony in the transcript and the oral testimony. Furthermore, the Twelfth District does not always hold that admitting the transcript of prior testimony to the jury in a written form is reversible error. Where the jury's finding was adequately supported by other competent, credible evidence it is not reversible error.

*Whitaker v. Weinrich* (Dec. 14, 1987), 12th Dist. No. CA86–12–179, 1987 WL 28437.

{¶ 33} In the case at hand, we are reviewing the claimed error under a plain error standard of review. Even if it is error to admit the written transcript to the jury, this error does not rise to the level of plain error. Hubbard is not denying that he had a gun that night or even that he shot at Wise God Allah. Furthermore, there was testimony from Henry and Coles that Hubbard had a gun. The jury could have relied upon this testimony in finding Hubbard guilty. Even if we agree with the Twelfth District's reasoning that the jury may rely on the written testimony over oral testimony, the error complained of does not rise to the level of plain error. This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. FOUR

{¶ 34} "The defendant was denied effective assistance of counsel at trial by defense counsel not objecting to any reference to a polygraph test and by introducing the topic in the defense case."

{¶ 35} Hubbard's claim of ineffective assistance of counsel is based on trial counsel's failure to object to the introduction of Coles's plea agreement, which contained a reference to a polygraph test. During the examination of Coles, the state introduced State's Exhibit 32, a plea agreement between the state and Coles. The plea agreement states that the state is recommending early judicial release in exchange for her testimony concerning the Wise God Allah shooting. The plea agreement explains that the Steubenville Police Department has gathered evidence and taken polygraphs and statements from other witnesses and that this information indicates that Coles is telling the truth. Hubbard's trial counsel did not object to the admission of the plea agreement. Hubbard's trial counsel asked further questions regarding the polygraph examinations. Hubbard's trial counsel also did not request that a limiting instruction be given to the jury concerning polygraph examinations. Hubbard believes that all three of these actions taken by trial counsel amounted to ineffective assistance of counsel.

{¶ 36} There is a two-prong test for ineffective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Thompson* (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407. The first prong requires the defendant to show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Sallie* (1998), 81 Ohio St.3d 673, 674, 693 N.E.2d 267. The second prong requires the defendant to show that counsel's error was so serious as to deprive the defendant of a fair trial or a reasonable probability that the result of the trial would be different. Id. A reviewing court presumes that counsel's conduct falls

within the wide range of reasonable professional assistance. *Thompson,* 33 Ohio St.3d at 10, 514 N.E.2d 407.

{¶ 37} Hubbard fails to show that trial counsel's performance was objectively deficient. Reviewing courts give great deference to defense counsel's performance and do not second-guess his or her trial tactics or related strategic decisions. *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965. It appears that Hubbard's trial counsel's strategy was to show that Coles's testimony was unreliable because in exchange for her testimony she got what he termed a "get out of jail free card." In order for this strategy to work, the plea agreement had to be discussed. Failing to object to this evidence is within the realm of trial tactics and does not amount to ineffective assistance of counsel. *State v. Gray* (Mar. 28, 2000), 10th Dist. No. 99AP–666, 2000 WL 311926.

{¶ 38} Furthermore, the plea agreement does state that polygraphs of witnesses were taken to determine whether Coles was telling the truth. Defense counsel's questions concerning the polygraph showed that Coles had not taken a polygraph. Therefore, even if a juror believed that polygraphs were reliable, Coles did not take a polygraph; therefore, her testimony might not be credible. This questioning was in line with the trial strategy of showing that Coles's testimony was unreliable.

{¶ 39} Hubbard is correct that the Ohio Supreme Court has held that admitting the polygraph tests of the defendant is allowed if certain conditions are strictly followed. *State v. Souel* (1978), 53 Ohio St.2d 123, 133, 7 O.O.3d 207, 372 N.E.2d 1318. However, appellate courts have not specifically ruled that a witness's polygraph test is admissible under the same conditions as a defendant's polygraph test. *State v. Lascola* (1988), 61 Ohio App.3d 228, 236, 572 N.E.2d 717. Regardless of the above, actual polygraph test results were never introduced, only statements that a polygraph was taken were introduced. Therefore, even if defense counsel should not have questioned regarding the polygraph or asked for a limiting instruction, the supposed error caused little harm. No expert testified that the witnesses who took the polygraphs passed. Additionally, Coles did not even take a polygraph. Therefore, the statement concerning the polygraph did not concern her. Therefore, this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NO. FIVE

{¶ 40} "The trial court erred in denying appellant's motion to dismiss on double jeopardy grounds in violation of said right under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution."

{¶ 41} Prior to the first trial, the court ruled that Hubbard's criminal record could not be mentioned at trial. In the first trial, the following conversation took place between Assistant Prosecutor Becker and Detective Lelless discussing how Hubbard became a suspect:

{¶ 42} "Q. And explain to this Jury how you began to formulate suspects. What—what exactly happened that led you to finding out what—what happened here?

{¶ 43} "* * *

{¶ 44} "A. Well, as I stated, we began to receive these anonymous phone calls stating that so and so was at the party or so and so was out in that street firing a gun and from there we began to start to put the pieces of the puzzle together and we had a hard time finding a lot of these people and then we began to take statements and then it was just like a Domino theory from there. The pieces of puzzle [sic] began—became, you know, evident and they came together.

{¶ 45} "Q. Okay. Now, Detective, I want to direct your attention to on or about December 2nd of 1997. Did you have an occasion to speak to a Willie Hubbard?

{¶ 46} "A. Yes, sir, I did.

{¶ 47} "Q. And can you explain to this Jury how it is you came to meet with Mr. Hubbard?

{¶ 48} "A. I needed to speak with Mr. Hubbard in regards to the shooting of Wise God Allah and him being at a party at 635 Logan. Knowing that Mr. Hubbard was on paper, meaning that he was on parole—."

{¶ 49} Hubbard then objected. Out of the jury's presence, Hubbard requested a mistrial. The trial court granted the mistrial. Hubbard then made a motion that reprosecution be barred on double jeopardy grounds. The state opposed this motion. A hearing be held. At the hearing, Assistant Prosecutor Becker stated that he had told Detective Lelless that he could not mention Hubbard's record. The detective stated that those conversations never happened. Detective Parker, who also testified at trial, stated that Prosecutor Becker had told both him and Detective Lelless that they could not mention Hubbard's record. The trial court held that reprosecution was not barred by double jeopardy. The trial court stated that there were two possible factual scenarios. One is that Prosecutor Becker did instruct Detective Lelless about the prior conviction and that Lelless did not hear or forgot the instruction. The other scenario was that Prosecutor Becker never instructed Detective Lelless to refrain from mentioning Hubbard's prior conviction. The trial court determined that in either scenario the testimony was not given to purposely induce a mistrial.

{¶ 50} The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. *Oregon v. Kennedy* (1982), 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416. Generally when a trial court grants a mistrial, the Double Jeopardy Clause does not bar a retrial. Id. at 673, 102 S.Ct. 2083, 72 L.Ed.2d 416. A narrow exception exists when the prosecutor's conduct was intentionally calculated to goad the defendant into seeking a mistrial. *State v. Loza* (1994) 71 Ohio St.3d 61, 70, 641 N.E.2d 1082. In determining whether the state goaded the defendant into a mistrial, courts look to determine whether the state engaged in an "intentional act of deception." Id. at 71, 641 N.E.2d 1082 (holding that the state's failure to receive the results of a chemical analysis until the morning of the last day of trial was not intentional goading); *State v. Owens* (1998), 127 Ohio App.3d 65, 68, 711 N.E.2d 767 (holding that the state goads the defendant into seeking a mistrial when the prosecutor vigorously fought for more than three months and won the right to keep secret the informant's identity and then during opening statements the prosecutor told the jury the name of the informant and told them that they would see a picture of the informant); *State v. Roughton* (1999), 132 Ohio App.3d 268, 278, 724 N.E.2d 1193 (holding that while failing to timely disclose evidence was deplorable under the circumstances of the case it was not intentional so as to force the defendant to request a mistrial).

{¶ 51} In the case at hand, the trial court correctly held that double jeopardy did not bar reprosecution. When the question asked by the state does not call for the answer given by the witness, the state is not goading the defense into seeking a mistrial. *State v. Wood* (1996), 114 Ohio App.3d 395, 400, 683 N.E.2d 354; *State v. Louis* (Mar. 7, 2001), 9th Dist. No. 20073, 2001 WL 222961 (the state questioning an officer about a car chase and the officer indicated that the defendant was on parole). The question of how Detective Lelless came to speak with Hubbard called for the response of his being at the party on Logan Street, not that Hubbard was on parole. Since the question asked by the state of how Detective Lelless came to question Hubbard did not call for an answer concerning Hubbard's prior conviction, the question and answer did not elicit prejudicial, improper testimony to goad the defendant into seeking a mistrial. *Wood*, 114 Ohio App.3d at 400, 683 N.E.2d 354. However, even if this question remotely calls for an answer that would mention Hubbard's prior record, no other actions on the part of the state indicate that it was intentionally trying to torpedo this case. The trial court was correct. If there was any error in the state's actions, it was the result of negligence, not intentional conduct. Negligence does not bar retrial on double jeopardy grounds. Id. Accordingly this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. SIX

{¶ 52} "The trial court erred in allowing scientific test results in essence that were not provided to the defense thus depriving the defendant of a fair trial pursuant to the Fourteenth Amendment."

{¶ 53} During trial, Detective Lelless testified that a gunshot-residue test was not performed. However, Detective Lelless testified that he performed a visual gunshot-residue test. He explained that he looked at Wise God Allah's hands and did not see any gunshot residue. Hubbard claims that the state never disclosed the results of this visual gunshot-residue test. According to Hubbard, the failure to disclose resulted in prejudice and Hubbard was unable to effectively cross-examine Detective Lelless concerning the visual gunshot-residue test.

{¶ 54} It has been held that the trial court does not abuse its discretion by admitting evidence where the record fails to disclose (1) a willful violation of Crim.R. 16, (2) that foreknowledge would have benefited the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced. *State v. Scudder* (1994), 71 Ohio St.3d 263, 268, 643 N.E.2d 524. Hubbard claims that none of the three elements can be proved. However, the cases that discuss this rule refer to tests that have documentation. The visual gunshot-residue test was not documented. Furthermore, when asked by the state if either party had previously asked him for the results of a visual gunshot-residue test, Detective Lelless stated no. Therefore, even if the results of this unscientific test were required under Crim.R. 16 to be disclosed to the defense, the state did not know the results of the test. Thus, the record does not disclose a willful violation, even if it could be concluded that it was a violation.

{¶ 55} Additionally, defense counsel's cross-examination about the visual gunshot-residue test was adequate. Defense counsel pointed out that this was not a scientific test. He also asked questions as to what would be the best evidence to show powder residue. Detective Lelless answered the question by stating that the test that was sent away to the lab to determine gunshot residue was the best indicator of gunshot residue. Also, defense counsel made the jury aware that the scientific test was not performed. Therefore, defense counsel's cross-examination was adequate. This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. SEVEN

{¶ 56} "There was insufficient evidence to convict Willie Hubbard of murder/attempted murder or felonious assault."

{¶ 57} In viewing a sufficiency-of-the-evidence argument, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements

of the crime proved beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Whether the state presented sufficient evidence is a question of law dealing with adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.

{¶ 58} Hubbard argues that the jury's verdicts of guilty on the counts of complicity to commit murder, attempted murder, and felonious assault were not supported by sufficient evidence. The state claims there was sufficient evidence.

{¶ 59} Regarding the attempted-murder verdict, the state produced sufficient evidence. In order to convict a person of attempted murder, the state must prove that the defendant acted purposefully in attempting to take the life of another. R.C. 2903.02. A jury may find intent to kill where the natural and probable consequence of a defendant's act is to produce death, and the jury may conclude from all of the surrounding circumstances that a defendant had a specific intention to kill. *State v. Clark* (1995), 101 Ohio App.3d 389, 405, 655 N.E.2d 795. In his statement, Hubbard admits shooting a gun at Wise God Allah. A natural and probable consequence of shooting at a person is that the person will be shot and killed. Therefore, Hubbard's statement alone is sufficient for a rational trier of fact to have found the essential elements of the crime.

{¶ 60} Regarding the charge of complicity to commit murder, the state produced sufficient evidence. Complicity is defined in R.C. 2923.03:

{¶ 61} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

{¶ 62} "(1) Solicit or procure another to commit the offense;

{¶ 63} "(2) Aid or abet another in committing the offense."

{¶ 64} It was established above that Hubbard acted purposely in attempting to kill Wise God Allah. The question therefore becomes whether Hubbard solicited or procured another to commit the offense or aided and abetted another in committing the offense. Hubbard's stated that he and a few other men went outside with guns and started shooting. The trial court defined "aid" as "to help, assist, or strengthen." Hubbard's admission that he went outside and shot at Wise God Allah along with five or six other men is an admission that he assisted in the killing of Wise God Allah. Whether or not Hubbard's gun actually fired the fatal shot is of no consequence. He was there shooting at Wise God Allah. Hubbard's argument against complicity fails.

{¶ 65} Regarding the felonious-assault argument, Hubbard's argument also fails. The jury convicted Hubbard of R.C. 2903.11(A)(2), knowingly causing or attempting to cause physical harm to another by means of a deadly weapon. A gun is a deadly weapon. As explained above, the natural and probable

consequence of shooting at someone is that the person will be harmed. In Hubbard's statement to police, he admitted shooting at Wise God Allah. Therefore, Hubbard's statement alone was sufficient. Hubbard's argument that the evidence presented by the state was insufficient to prove the crimes of complicity to commit murder, attempted murder, and felonious assault is without merit.

{¶ 66} For the foregoing reasons, the decision of the trial court is hereby affirmed.

Judgment affirmed.

GENE DONOFRIO and WAITE, JJ., concur.