[Cite as *State v. Brown*, 2017-Ohio-7701.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 15 MA 0130 |
| V. | ) | |
| | ) | OPINION |
| PAUL BROWN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 09 CR 1231

JUDGMENT:      Affirmed

APPEARANCES:
For Plaintiff-Appellee      Paul Gains
Prosecutor
Ralph Rivera
Assistant Prosecutor
21 West Boardman St., 6th Floor
Youngstown, Ohio 44503-1426

For Defendant-Appellant      Attorney John Juhasz
7081 West Boulevard, Suite 4
Youngstown, Ohio 44512-4362

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: September 12, 2017

DONOFRIO, J.

{¶1} Defendant-appellant, Paul Brown, appeals from a Mahoning County Common Pleas Court judgment overruling his motion to dismiss the indictment against him on murder and weapons charges.

{¶2} The facts are taken from appellant's previous appeal.

On the night of May 25, 2009, April Jackson filed a missing persons report as to her seventeen-year-old son Ashten Jackson. It was reported that Ashten left the house the night before with appellant Paul Brown and a Raymond Patterson. Ashten briefly returned home at 4:00 a.m., retrieved a black hooded sweatshirt, and left again with Brown and Patterson. While a Youngstown police officer was taking this report, Ms. Jackson pointed out that appellant was driving past the house. The officer yelled for appellant to stop his vehicle. That officer ended up arresting appellant as he was armed with a weapon (which Ms. Jackson said was stolen from her).

Appellant was then interviewed by Detectives Kelty and Kelly just as May 26 began. Appellant stated that Ashten Jackson wanted to participate in a robbery with Raymond Patterson in the early morning hours of May 25. Appellant denied involvement. He noted that Ms. Jackson called him on the morning of May 25 asking for help finding her son and that he drove her to various places.

Appellant claimed that he later saw Patterson, who was fidgety as he "stood there" and told him that it went "all bad" over on the east side, quoting Patterson as saying, "Man, it's all bad. The theory went bad, man. I think he got hit. It went all bad." (DVD Tr. 38, 40). Appellant also alleged that after "standing" there and speaking to him for 15 minutes, Patterson gave him Ashten's gun. (DVD Tr. 3839). In explaining that he was arrested while taking the gun back to Ms. Jackson, appellant added that the police had his phone so they could see that she had been calling him. (DVD Tr. 39-40).

The detectives thereafter interviewed Raymond Patterson, who said *appellant* and Ashten were planning to rob a drug dealer on the east side. He provided police with the location of the house where the target lived and his nickname.

The person in that house with the same nickname provided by Patterson told police that an armed person knocked on his door at 4:00 a.m., while another person waited in the car. The armed visitor called himself Paul and said he received a call that his friend had some trouble there. The resident refused to open the door. The resident described the visitor and the vehicle.

On May 27, the detectives were contacted by a person stating that appellant confessed to him the shooting of Ashten at a May 25 Memorial Day picnic. Ashten's body was found in a field on the east side (near the target house) on May 30, 2009. Ashten had been shot by the weapon recovered from appellant during his arrest.

On November 5, 2009, appellant was indicted for murder with a firearm specification, having a weapon under a disability, and carrying a concealed weapon. A trial began in January of 2012. There was an issue with the failure to produce a police report from Raymond Patterson's arrest by another officer. The defense obtained this report from the defendant's attorney in a federal case. The court considered citing a detective for contempt but concluded that the report was not maliciously denied to the defense. Then, an issue arose during Ms. Jackson's testimony when it was realized that her interview was not provided to the defense.

The trial court declared a mistrial. After various trial dates were scheduled and continued, a trial was set to begin on April 16, 2013. Before a jury was assembled, there was an off-the-record discussion concerning appellant's cell phone. The trial court then ordered Net 10

aka TracFone to provide a pin number for voicemail, the original SIM card number for the phone number, and an electronic copy of any voicemails.

\* \* \*

On September 5, 2013, the defense filed a motion to dismiss, asserting that appellant's due process rights were violated when the police tampered with/destroyed material exculpatory evidence or in the alternative tampered with/destroyed potentially useful evidence in bad faith. The evidence said to be tampered with was the defendant's cell phone containing a relevant voicemail message. The defense claimed that during the May 26 interview, appellant "told detectives to check his cell phone, as there was a message to him from state's witness Ray Patterson, wherein Patterson told Defendant that 'it went bad, I think he got hit,' meaning the victim in this case." The defense stated that this message shows that Patterson, not appellant, was present at the robbery.

(Emphasis sic)*; State v. Brown*, 7th Dist. No. 13 MA 172, 2014-Ohio-5824, ¶ 7-14, 16.

{¶3} The trial court initially granted appellant's motion to dismiss. But on the state's motion for relief from judgment, the court vacated its prior ruling and granted the relief requested by the state. In so ruling, the court relied on testimony from a BCI agent that the SIM card in the phone when appellant was arrested was the one currently in the phone (and the one in the phone when the court ordered its examination). *Id.* at ¶ 39. Appellant filed an appeal from the judgment vacating the dismissal. *Brown*, 2014-Ohio-5824. We affirmed the trial court's judgment on appeal. *Id.*

{¶4} Appellant's next trial began on June 15, 2015. A jury was sworn in and the first witness testified. William Nolan was the second witness. The state's theory of the case was that appellant, Patterson, and Ashten had a plan to rob Nolan on the

night in question. (Tr. 44-45). Ashten's body was later found in a field behind Nolan's house.

**{¶5}** Nolan testified that at 4:00 a.m. on the day in question the motion-detector light went on outside of his house and he noticed a man in his driveway. (Tr. 107, 110). Nolan stated he had never seen this man before. (Tr. 110). Nolan stated that the man identified himself as Paul Brown. (Tr. 110). According to Nolan, the man stated that Ray Patterson told him something was going on and Patterson needed his help. (Tr. 111). The man also told Nolan that he had a gun on him, although Nolan did not see a gun. (Tr. 111). Nolan told the man to get off of his property. (Tr. 112). The man then jogged back to the gold SUV that was in the middle of the street, got in the passenger side, and the vehicle drove away. (Tr. 111-113). Nolan further testified that the next day the police "busted" down his door and began asking him about a murder. (Tr. 115). Nolan stated that he later gave a statement to the police. (Tr. 116).

**{¶6}** The court then took a recess. A video was shown to defense counsel. (Tr. 117). The video was of Nolan giving his statement to the police. In the video, the detective asked Nolan to see if he recognized anyone from the night in question. The detective gave Nolan a photo array that included appellant's photograph. Nolan first indicated that the photograph of appellant "kind of" looked like him. But Nolan ultimately identified someone in the array other than appellant as the person he saw on the night in question who identified himself as "Paul Brown." The detective then pointed out appellant's photograph and told Nolan "No, the first one you went to is Paul Brown." The detective said, "that's Paul right there" and pointed at appellant's photograph.

**{¶7}** Defense counsel moved for a dismissal or, in the alternative, for a mistrial. (Tr. 119). The trial court recognized that defense counsel had never seen the video prior to viewing it during trial. (Tr. 125). The court found that the non-disclosure of the video was unintentional by the state. (Tr. 132). The court then declared a mistrial. (Tr. 132). It rescheduled the trial for July 20, 2015. (Tr. 133).

{¶8} On July 13, 2015, appellant filed a motion for discharge. Appellant argued the non-disclosure of the video was not a mere discovery violation but was a *Brady* violation requiring dismissal of the charges. He contended his retrial was barred on double jeopardy grounds. Appellant requested a hearing on his motion along with findings of fact.

{¶9} Without holding a hearing, the trial court overruled appellant's motion. Appellant filed a timely notice of appeal on August 5, 2015. He now raises three assignments of error.

{¶10} Appellant's first assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO CONDUCT AN EVIDENTIARY HEARING AND IN FAILING TO ISSUE FINDINGS OF FACT, CONCLUSIONS OF LAW AS TO THE REASONS IT DENIED THE MOTION TO DISMISS, WHICH IS A DENIAL OF THE LIBERTIES GUARANTEED APPELLANT BY U.S. CONST. AMEND. V AND XIV, AND BY OHIO CONST., ART. I, §§1, 2, AND 16.

{¶11} Appellant argues the trial court should have, and failed to, conduct an evidentiary hearing and issue findings of fact and conclusions of law on his motion to dismiss the indictment. He claims the court denied him the opportunity to present all pertinent evidence regarding his argument that double jeopardy barred his retrial. Appellant asserts this court cannot effectively review his claims because the trial court simply overruled his motion without addressing the factual or constitutional issues he presented. Thus, appellant asks that we remand this case with orders for the trial court to hold an evidentiary hearing on his motion to dismiss and to issue findings of fact and conclusions of law after the hearing.

{¶12} We review a trial court's decision on a motion to dismiss an indictment for abuse of discretion. *State v. Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or

unconscionable.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶13} Crim.R. 12(F) governs pre-trial motions to dismiss.  Appellant's motion to dismiss can be viewed as a pre-trial motion given that when it was filed, his next trial was set to begin soon.  The rule provides that the court may decide the motion based on briefs, affidavits, proffers, a hearing, or other appropriate means.  Crim.R. 12(F).  It further provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."  Crim.R. 12(F).

{¶14} During his opening statement, the prosecutor told the jury that Nolan would corroborate Patterson's story that a man named "Paul" was outside of Nolan's home on the night in question and that "Paul" told Nolan he had a gun.  (Tr. 50-51).

{¶15} In his motion to dismiss, appellant emphasized that in the video of Nolan's interview, Nolan identified someone other than appellant.  Thus, appellant argued the video clearly called appellant's identity into question.  He asserted in his motion that this was the reason the video was not provided to the defense.

{¶16} Appellant also alleged in his motion that following the June 17, 2015 mistrial, counsel met with the prosecutor and Youngstown Police Detective to go through the entire police file, prosecutor's file, and internal affairs file in order to avoid any other non-disclosures.  Appellant asserted that three relevant letters were discovered that were also never provided to him in discovery.

{¶17} There is no Criminal Rule or law that obligated the trial court to hold a hearing on appellant's motion to dismiss.  Moreover, the trial court did make findings on the record when it was initially faced with appellant's motion for either a dismissal or a mistrial.  In deciding to grant the mistrial, the court stated:

> The court finds that on no deliberate action of either the State of Ohio or defense counsel was the video not disclosed.
>
> However, the court further finds that this could affect defense counsel's strategy to prepare the case and to try the case in this matter.  And given the seriousness of the offense, it's the court's duty to protect his constitutional rights.  The Court is going to declare a mistrial.

(Tr. 132). Thus, the court found on the record no intentional wrongdoing or intentional failure to disclose by the state.

**{¶18}** Additionally, in responding to appellant's request for findings of fact, the court stated that when it granted the mistrial it made clear, on the record, the reasoning behind its ruling and the facts on which it relied. (July 22, 2015 Judgment Entry).

**{¶19}** The trial court acted within its discretion in denying appellant's subsequent motion to dismiss the indictment. The video came to defense counsel's attention during Nolan's testimony. In light of the video, the court continued the matter until the next day. (Tr. 120-121). The next day, defense counsel stated he had then had the opportunity to go through the video line by line and was now prepared to make an argument to the court. (Tr. 121). Then, before ruling on appellant's oral motion for dismissal or a mistrial, the court listened to arguments by both defense counsel and the state. (Tr. 121-132). Both sides presented arguments and the court asked several questions. (Tr. 121-132). The court then issued its ruling granting the mistrial. (Tr. 132).

**{¶20}** Given that the trial court had already listened to arguments and made findings on the record regarding appellant's oral motion to dismiss or for a mistrial, the court did not abuse its discretion in ruling on appellant's written motion for a dismissal without holding another hearing.

**{¶21}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶22}** Appellant's second assignment of error states:

THE TRIAL COURT ERRED IN GRANTING A MISTRIAL RATHER THAN DISMISSING THE INDICTMENT, AS RE-PROSECUTION IS BARRED BY DOUBLE JEOPARDY.

**{¶23}** Here appellant contends this court should order that his retrial is barred by double jeopardy. Appellant argues that when the state's conduct gives rise to the

mistrial, then a retrial is barred by double jeopardy. He asserts that in this case there was the previous issue of the cell phone, police reports and witness statements that were not furnished to him, and now a photo array in which the witness identified someone other than him was not furnished to him. Appellant claims the non-disclosures by the detective were intended to help the prosecution even if the prosecutors themselves were personally unaware of the non-disclosures.

**{¶24}** When reviewing the denial of a motion to dismiss an indictment on the grounds of double jeopardy, we are to conduct a de novo review. *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 20.

**{¶25}** The Double Jeopardy Clause generally does not bar retrial following a mistrial. *State v. Hubbard*, 150 Ohio App.3d 623, 2002-Ohio-6904, 782 N.E.2d 674, ¶ 50, citing *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). There is a narrow exception to this rule, however, when the defendant has been goaded into seeking a mistrial by the prosecutor's conduct. *Hubbard* at ¶ 50, citing *State v. Loza*, 71 Ohio St.3d 61, 70, 641 N.E.2d 1082 (1994). To invoke the exception, the prosecutor's conduct must reflect that the state "engaged in an 'intentional act of deception.'" *Hubbard* at ¶ 50, citing *Loza* at 71.

**{¶26}** In this case, while discussing the video and when people may have become aware of it, defense counsel stated that during appellant's first trial, which was tried by a different prosecutor, the prosecutor "certainly" had not seen the video. (Tr. 125).

**{¶27}** As to the prosecutors involved in the most recent trial, defense counsel stated: "I don't think they had it and didn't provide it to me. I don't think that was it. And obviously they viewed it. So they knew of it. They were aware of it. And probably assumed that I had viewed it and looked at it." (Tr. 126).

**{¶28}** Later, defense counsel stated: "I'm surely not blaming Mr. Yacovone or Ms. Cantalamessa [the prosecutors] or Mr. Kelty [the detective who was involved]. In this case, actually I've been looking at - - I'm really not even faulting Kelty. Because I bet you he was pretty scared." (Tr. 127).

{¶29} And then defense counsel stated: "But you know, I mean, I can't say that I believe that this was done intentionally, Your Honor." (Tr. 128).

{¶30} Finally, the prosecutor, in offering an explanation, discussed the evidence and stated that the prosecutor's office was not attempting to hide anything from the defense to which defense counsel stated, "I agree with that." (Tr. 129).

{¶31} Based on all of the above, the trial court found that the state did not take deliberate action to not disclose the video. (Tr. 132).

{¶32} Defense counsel's statements make clear that he did not believe that the state acted intentionally in failing to disclose the video of Nolan's police interview. Defense counsel stated the prosecutors likely assumed he had seen the video. Counsel even stated he was not assigning fault to the detective involved.

{¶33} Moreover, there is no direct evidence to suggest that the failure to disclose was intentional by the state. The prosecutor denied any intentional non-disclosure. And significantly, it was during the prosecutor's questioning of Nolan that his video-taped interview with police was brought up. In fact, the prosecutor specifically asked Nolan if he went to the police station to give a statement to the police. (Tr. 116). Nolan stated that he did go to the police station to give a statement and he brought his lawyer. (Tr. 116). It was at this point that defense counsel asked to approach the bench and the trial court called a recess. (Tr. 117). The parties then watched the video of Nolan's interview. (Tr. 117). Defense counsel expressed his surprise at the video of Nolan's police interview. (Tr. 117). Had the state been attempting to conceal the video of Nolan's interview, it would not have elicited testimony regarding that interview and brought the video to the trial.

{¶34} This instance of not disclosing the video to the defense was the second time the state failed to disclose evidence to the defense. In the first instance, during appellant's first trial, the state failed to disclose a police report and an interview. The trial court declared a mistrial in that case. In this second instance, the state failed to disclose the video of Nolan's police interview. Despite what can be viewed as shoddy trial preparation, there is no direct evidence in this case that the state

intentionally withheld the video from the defense with the intent to goad appellant into asking for a mistrial. The Sixth District aptly summed up this situation: "While we find the repeated failure to make full, timely disclosure of evidence deplorable, we cannot conclude that the purpose behind the behavior was a desire to force a mistrial." *State v. Roughton*, 132 Ohio App.3d 268, 278, 724 N.E.2d 1193 (6th Dist.).

**{¶35}** Because the evidence does not demonstrate that appellant was goaded into requesting a mistrial by an alleged "intentional act of deception" on the part of the state, appellant's re-trial is not barred on double jeopardy grounds.

**{¶36}** Accordingly, appellant's second assignment of error is without merit and is overruled.

**{¶37}** Appellant's third assignment of error states:

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE BY FAILING TO GRANT A MOTION TO DISMISS, AND INSTEAD GRANTED A MOTION FOR MISTRIAL, AS ONLY A DISMISSAL WAS A PROPER REMEDY FOR REPEATED DUE PROCESS VIOLATIONS.

**{¶38}** In his final assignment of error, appellant asserts that another mistrial is not the proper remedy for repeated *Brady* violations that have caused other mistrials. He asserts that it is irrelevant whether the prosecutors acted in good faith or not. It is the fact that exculpatory evidence was not disclosed to him that is relevant here, appellant argues. Appellant goes on to argue that the state was required to disclose the video of the photo array to him because it is exculpatory evidence.

**{¶39}** In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court developed a rule of law, often referred to as the "*Brady* rule," which imposes upon a prosecutor a due process duty to disclose evidence favorable to the accused. Specifically, the court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of

the good faith or bad faith of the prosecution." *Id.* at 87. Additionally, the duty to disclose exculpatory evidence extends to those officials acting on the government's behalf, such as the police. *State v. Payne*, 10th Dist. No. 09AP-107, 2010-Ohio-1018, ¶ 30, citing *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

**{¶40}** If the favorable evidence is disclosed during the trial, there is no *Brady* violation. *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 82. *Accord State v. Bruce*, 10th Dist. No. 07AP-355, 2008-Ohio-4370, ¶ 68, *State v. Hall*, 8th Dist. No. 83361, 2004-Ohio-5963, ¶ 14.

**{¶41}** In this case, the video was disclosed to defense counsel during trial. Moreover, the trial court granted appellant's motion for a mistrial. Thus, there was no *Brady* violation.

**{¶42}** Accordingly, appellant's third assignment of error is without merit and is overruled.

**{¶43}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, P.J., concurs.