DECISION AND JUDGMENT ENTRY
{¶ 1} Tony R. Askew appeals the judgment of the Ross County Court of Common Pleas convicting him of Aggravated Robbery in violation of R.C. 2911.01, a first degree felony; Assault in violation of R.C. 2903.13, a fourth degree felony; and Escape in violation of R.C. 2921.34, a fifth degree felony. Askew first contends that the prosecutor committed misconduct that deprived him of his constitutional right to a fair trial. Because we find the evidence adduced at trial with regard to his aggravated robbery and escape convictions was not so overwhelming as to render the prosecutor's misconduct in directly commenting upon Askew's failure to testify at trial harmless beyond a reasonable doubt, we agree with respect to those convictions. However, because we find that the remaining evidence, standing alone, constitutes overwhelming proof that Askew is guilty of assault, we find that the prosecutor's statements constitute harmless error with regard to that offense.
 {¶ 2} Next, Askew contends that his trial counsel was ineffective because he failed to effectively respond to the prosecutor's improper statements during closing argument, and by failing to cross-examine Capt. Moore regarding alleged inconsistencies between his testimony at the preliminary hearing and at trial. Because we find that our resolution of Askew's first assignment of error renders his second assignment of error moot with regard to his convictions for aggravated robbery and escape, we decline to address it as it relates to those convictions. In light of our finding that the prosecutor's improper statements constitute harmless error with regard to his assault conviction, we find that Askew cannot demonstrate any reasonable probability that, but for his counsel's alleged deficiencies in responding to those comments, the result of the proceeding would have been different. Additionally, because we find that trial counsel's failure to cross-examine Capt. Moore regarding his allegedly inconsistent testimony constitutes sound trial strategy, we conclude that it cannot form the basis of a claim for ineffective assistance of counsel.
 {¶ 3} Finally, Askew contends that the record contains insufficient evidence to demonstrate that he possessed the requisite mental intent to commit aggravated robbery. Because, when viewing the evidence in a light most favorable to the state, we find that a rational trier of fact could find, beyond a reasonable doubt, that Askew knowingly attempted to remove Capt. Moore's gun from its holster, we disagree.
 {¶ 4} Accordingly, we: (1) sustain Askew's first assignment as it relates to his convictions for aggravated burglary and escape and overrule it as it relates to his conviction for assault; (2) overrule his second assignment of error as it relates to his assault conviction and find it moot as it relates to his convictions for aggravated robbery and escape; (3) overrule his third assignment of error; (4) vacate his convictions for aggravated robbery and escape; and (5) remand this cause to the trial court for further proceedings consistent with this decision.
 I. {¶ 5} This case arises out of an incident that occurred on June 30, 2005, shortly before midnight after Captain Roger Moore, of the Chillicothe Police Department, stopped Askew for driving left of center.
 {¶ 6} Initially, the state filed two complaints against Askew in Chillicothe Municipal Court, i.e. (1) Escape in violation of R.C. 2921.34, a fifth degree felony, in Case No. CRA0502167 A; and (2) Assault, in violation of R.C. 2903.13, a fourth degree felony, in Case No. CRA0502167 B.
 {¶ 7} On July 11, 2005, the Chillicothe Municipal Court conducted a preliminary hearing with regard to those complaints. Askew appeared at the preliminary hearing, unrepresented by counsel. At that time, the court heard the testimony of Capt. Moore and Officer Gay. At the conclusion of the hearing, the court found probable cause that Askew committed the offenses of escape and assault, and ordered him bound over to the Common Pleas Court on both charges.
 {¶ 8} On August 5, 2005, the Ross County Grand Jury indicted Askew on one count of Aggravated Robbery in violation of R.C.2911.01, a first degree felony; one count of Assault in violation of R.C. 2903.13, a fourth degree felony; and Escape in violation of R.C. 2921.34, a fifth degree felony. The case proceeded to a jury trial.
 {¶ 9} Capt. Moore testified about his encounter with Askew. His testimony at trial was similar to his testimony at the preliminary hearing. However, he testified at greater length and in greater detail regarding the incident than he did at the preliminary hearing. Capt. Moore indicated that because he observed Askew leaning to the right and bending over toward the floorboard of his vehicle after Capt. Moore activated his lights and sirens, he approached the vehicle with his loaded weapon drawn. He instructed Askew to turn the vehicle off and place his hands outside the window. Askew initially complied, but then pulled his hands back into the vehicle and began to open the door. Capt. Moore ordered Askew to remain in the car, but Askew refused and exited the vehicle toward Capt. Moore. As Askew tried to open the vehicle door, Capt. Moore used his radio to call for backup. Capt. Moore then testified: "As he came out of the vehicle I tried to spin him away from me cause we was face-to-face. He spun back around. Then he was yelling[,] `get off of me, get off of me.' I said, `You're under arrest.' He grabbed me by the waist and I had a different holster on at the time but he grabbed my weapon. I felt a tug on my gun belt and the first thing we're trained to do is to trap the weapon. So you put your elbow on the gun, you hold it against you and that keeps it in the holster. So while I'm doing that I take my left hand and push him off of me, which pushes him back against the car. I spin him back around again. He — I call for back-up again. I grab both of his arms. I had them behind his back trying to pull them up so I could get him into a handcuffing position. He spins back around again. Shoves me backwards. As I go backwards he tries to run past me because of the way the car door is — like this. He has only one way of getting away is to run along the side of the car towards the back. He tries to run past me. I grab him in a headlock. As I grab him in a headlock, I'm calling for back-up again. He spins back around again and I feel a tug on my gun belt where my weapon's (sic) at. Again I have to trap my weapon and let go of him and try to call for back-up. So I end up getting him in a headlock with my left arm trapping my weapon calling for back-up. He ends up dragging me as we're standing around the — driver's side of the vehicle. Along the back of the vehicle — the whole time we're going across the vehicle — we end up on the passenger side of the vehicle. I end up calling for back-up again. I end up getting him in a — a headlock between his arm and his neck and — taking hold of him. We end up going to the ground. I can hear sirens in the background coming. Excuse me. Anyways — I'm a — I'm — I'm on top of him and — he spins around and I end up on the bottom and I — I go to kick him off. I get kicked off. I'm thinking — hear the other officers coming and — I grab him by his leg. He pulls loose and as the officers were at a foot chase and — the guy coming out of the apartment chased him up the road."
 {¶ 10} Upon further direct examination, Capt. Moore testified that after he told Askew that he was under arrest, Askew grabbed him by the waist and started pulling his weapon. Capt. Moore indicated that he trapped his weapon, but that he had to shove Askew off and spin him around "cause I didn't know if there was a gun drawn."
 {¶ 11} Capt. Moore also testified that when he was wrestling Askew on the ground, Askew did not voluntarily let go and leave once Askew rolled over and got on top of Capt. Moore. Instead, Capt. Moore indicated that he had to force Askew off — kicking with his knee and pushing with his hands.
 {¶ 12} Officer Gay testified that he observed Capt. Moore struggling with Askew when he arrived on the scene. When he saw Askew flee the scene, he exited his cruiser and gave chase. Officer Gay indicated that when he caught up to Askew and realized that Askew did not have a weapon in his hand, he told Askew that he was going to use a tazer. Officer Gay stated that Askew then began to comply with verbal commands, and he was able to place Askew in handcuffs.
 {¶ 13} Derrick Nelson resided in the apartment complex where the incident took place. He testified that he could see the police lights from his living room window and looked out the window to see what was happening. He saw the police officer approach the car, and could tell that some words were exchanged. He then saw the police officer and the suspect begin to wrestle, moving from the driver's side of the car to the passenger's side, and eventually falling to the ground. As Nelson stepped outside his apartment, he then saw Askew flee the scene.
 {¶ 14} Joseph Johnson also lived in the apartment complex where the incident took place. He testified that from his bedroom window, he saw Capt. Moore approach the car with his gun drawn and heard him make a few commands to the driver. He indicated that Askew was not cooperating with the officer. He then saw Capt. Moore, with his gun in one hand, attempt to turn Askew around and that Askew started struggling with the officer. Seeing that the officer did not have backup, he got dressed and went out to help. When he ran out the front door, Askew took off running. Johnson gave chase, but made a wrong turn and did not witness Askew's apprehension.
 {¶ 15} At the conclusion of the state's case, Askew's counsel moved the court for acquittal pursuant to Crim.R. 29, on the ground that the state did not present sufficient evidence to convict Askew of any of the charges. The court denied the motion. Counsel presented their closing arguments. After deliberating, the jury found Askew guilty of all three charges. The trial court sentenced Askew to consecutive prison terms of six years in prison for Aggravated Robbery, twelve months for Assault, and eleven months for Escape.
 {¶ 16} Askew now appeals raising the following assignments of error: "I. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE MISCONDUCT OF THE PROSECUTING ATTORNEY. II. APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. III. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 II. {¶ 17} In his first assignment of error, Askew contends that prosecutorial misconduct deprived him of his constitutional right to a fair trial. Specifically, Askew contends that the prosecutor made improper remarks during his closing argument regarding Askew's failure to testify at trial. In contrast, the state contends that the prosecutor's argument did not suggest to the jurors that they should infer guilt from Askew's silence. Instead, the state argues that in the context of the entire closing argument, the prosecutor's statements regarding Askew's failure to testify constitute nothing more than an argument that, from the evidence presented, the jury could infer that Askew knew he was under arrest. Moreover, the state contends that Askew's counsel effectively objected to the prosecutor's comments, and that the trial court sustained the objection and issued a curative instruction to the jury.
 {¶ 18} During his rebuttal closing argument, the prosecutor stated: "And you also heard Mr. McCleese point out to you that the defendant didn't testify. So how do we know if he knew he was under arrest. Well — the court's going to tell you that that's his option not to testify. It's his right. But we can't look into the mind of another person can we. I can't look in — I can't read minds and I'm sure none of you can. You have to infer whether a person knew what was going on from the circumstances — the facts and the circumstances presented to you and what you have is the testimony of an officer who said — a credible officer who said, `I told this man he was under arrest'. When you are under arrest that means you stay there. You cannot run away. You can't break that arrest — that detention. If we were to buy that argument that, hey, he didn't get up there and say he knew —"
 {¶ 19} At that point, defense counsel interrupted and the attorneys approached the bench. Defense counsel objected to the prosecutor's comment about Askew's failure to testify, and the trial court sustained the objection. At the conclusion of the bench conference, the court stated, "Jury will be instructed to disregard that last statement." In its instructions to the jury, the trial court did properly instruct the jury that Askew exercised his Constitutional right not to testify at trial, and that the jury could not consider that fact for any purpose.
 {¶ 20} Askew concedes that he did not object to the prosecutors' initial statements regarding his failure to testify at trial. "`A claim of error in a criminal case can not be predicated upon the improper remarks of counsel during his argument at trial, which were not objected to, unless such remarks serve to deny the defendant a fair trial.'" State v.Landrum (1990), 53 Ohio St.3d 107, 111, quoting State v. Wade
(1978), 53 Ohio St.2d 182, paragraph one of the syllabus; accordScott v. State (1923), 107 Ohio St. 475, paragraph two of the syllabus. However, even when a defendant fails to raise a timely and proper objection to an error affecting a substantial right, we may notice the error pursuant to Crim.R. 52(B).
 {¶ 21} "By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. First, the reviewing court must find that the trial court erred, i.e., deviated from a legal rule. Id., citing State v. Hill (2001),92 Ohio St.3d 191, 200, citing United States v. Olano (1993), 507 U.S. 725,732 (interpreting Crim.R. 52(B)'s identical federal counterpart, Fed.R.Crim.P. 52(b)). Second, the error must be plain. Barnes
at 27.
 {¶ 22} Finally, the trial court's error must have affected the accused's "substantial rights." Barnes at 27. The Ohio Supreme Court has interpreted this element of the rule to require a finding that the error affected the outcome of the trial. Id., citing Hill at 205; State v. Moreland (1990),50 Ohio St.3d 58, 62; State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 23} Even if a reviewing court finds that a forfeited error satisfies all three prongs of the test, the court is not required to notice the error. Barnes at 27. Rather, the court retains discretion to decide whether it should correct the error. Id. A reviewing court should use its discretion under Crim.R. 52(B) to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Barnes, supra, quoting Long at paragraph three of the syllabus, and citing Olano, 507 U.S. at 736. The United States Supreme Court has opined that reviewing courts are not limited to finding plain error only in cases of actual innocence.Olano, 507 U.S. at 736. "An error may `seriously affect the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." Id. at 736-737.
 {¶ 24} The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced. State v. Smith,97 Ohio St.3d 367, 2002-Ohio-6659 at ¶ 45, citing State v. Smith
(1984), 14 Ohio St.3d 13, 14. The "conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial." State v. Gest
(1995), 108 Ohio App.3d 248, 257; State v. Keenan (1993),66 Ohio St.3d 402; State v. Apanovitch (1987), 33 Ohio St.3d 19,24. The Ohio Supreme Court has recognized that the prosecution is afforded wide latitude in closing arguments. Smith,97 Ohio St.3d 367, at ¶ 51. The "touchstone of analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an `error free, perfect trial.'" Gest at 257.
 {¶ 25} The United States Supreme Court has held that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Griffin v. California (1965),380 U.S. 609, 615. Thus, it was improper for the prosecutor to comment directly upon Askew's decision not to testify at trial. However, not every improper prosecutorial comment regarding the accused's silence requires the automatic reversal of the accused's conviction. Chapman v. California (1967),386 U.S. 18, 22 (holding that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring automatic reversal of the conviction."); State v. Zimmerman (1985)18 Ohio St.3d 43, 44-45.
 {¶ 26} We may not affirm the conviction unless we conclude, based upon the record as a whole, that the prosecutor's improper comments were harmless beyond a reasonable doubt. Id. at 45, citing United States v. Hasting (1983), 461 U.S. 499; cf.State v. Smith (1984), 14 Ohio St.3d 13. "Therefore, the question we must ask is this: Absent the prosecutor's allusion to the failure of the accused to testify, it is clear, beyond any reasonable doubt, that the jury would have returned a verdict of guilty?" Zimmerman at 45, citing Hasting at 510-511. A constitutional error is harmless beyond a reasonable doubt "if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." State v. Williams (1988),38 Ohio St.3d 346, at 349. Therefore, we consider the effect of the prosecutor's misconduct as it applies to each of the charges against Askew.
 A. Aggravated Robbery {¶ 27} R.C. 2911.01 (B) provides: "No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply: (1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties; (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer."
 {¶ 28} R.C. 2901.22(B) defines "knowingly" as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 29} Here, reviewing the state's evidence with regard to the charge of aggravated robbery, we cannot conclude that it constitutes overwhelming proof of Askew's guilt. While Capt. Moore's testimony regarding the tugging on his weapon and his gun belt is emotional and compelling, we cannot say that it alone constitutes overwhelming proof that Askew knowingly attempted to remove the weapon from Capt. Moore's person. We note that no other witness testified regarding Askew's contact with Capt. Moore's weapon. Moreover, given the nature of the struggle and the fact that Capt. Moore testified that Askew grabbed him by the waist, we cannot conclude that a reasonable juror could only find that Askew's contact with the weapon was a "knowing" attempt to remove the weapon from Capt. Moore's person. Accordingly, we cannot find that the prosecutor's comment, "* * * hey, he didn't get up there and say he knew — [,]" was harmless beyond a reasonable doubt with regard to Askew's aggravated robbery conviction.
 {¶ 30} Because we find that the prosecutor's final statement regarding Askew's failure to testify, to which defense counsel properly objected, constituted prejudicial error with regard to Askew's aggravated robbery conviction, we find that Askew's argument that the prosecutor's earlier statements constitute plain error is moot with regard to that conviction. Therefore, we do not consider it here. See App.R. 12(A)(1)(c).
 B. Escape {¶ 31} Similarly, we cannot find that the evidence supporting Askew's escape conviction was so overwhelming that a reasonable juror could have only returned a guilty verdict.
 {¶ 32} R.C. 2921.34(A)(1) provides that "[n]o person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention." "`Detention' means arrest * * *." R.C. 2921.01(E). An arrest occurs when: (1) an officer intends to arrest; (2) the officer has real or pretended authority to arrest; (3) the officer secures actual or constructive detention of the person; and (4) the person understands he or she is under arrest. State v.Barker (1978), 53 Ohio St.2d 135, 372 N.E.2d 1324, paragraph one of the syllabus.
 {¶ 33} "A person is under `detention' as that term is used in R.C. 2921.34, when he is arrested and the arresting officer has established control over his person." State v. Reed (1981),65 Ohio St.2d 117, syllabus. "Control can be established by the surrender or submission by the person or by police exertion of control over the person." State v. Jackson (1992),83 Ohio App.3d 298, 300. Further, "the `control' necessary to establish detention need not be established by physical restraint." Statev. Davis (1992), 81 Ohio App.3d 706, 720, 612 N.E.2d 343. Whether an officer had sufficient control of an accused to constitute an arrest is a factual issue that must be determined on a case-by-case basis. State v. Huffman (1987),38 Ohio App.3d 84, 86.
 {¶ 34} Here, while the eyewitnesses testified that they saw Askew flee the scene after struggling with Capt. Moore, reasonable minds could differ as to whether Capt. Moore ever established control over Askew sufficient to have constituted an arrest to support a conviction for escape. Accordingly, we cannot find that the prosecutor's comment, "* * * hey, he didn't get up there and say he knew — [,]" was harmless beyond a reasonable doubt with regard to Askew's escape conviction.
 {¶ 35} Because we find that the prosecutor's final statement regarding Askew's failure to testify, to which defense counsel properly objected, constituted prejudicial error with regard to Askew's escape conviction, we find that Askew's argument that the prosecutor's earlier statements constitute plain error is moot with regard to that conviction. Therefore, we do not consider it here. See App.R. 12(A)(1)(c).
 C. Assault {¶ 36} R.C. 2903.13(A) provides that a person is guilty of assault if he did: "* * * knowingly cause or attempt to cause physical harm to another or to another's unborn."
 {¶ 37} Here, Capt. Moore testified regarding the physical nature of his struggle with Askew, indicating that at various times, Askew: (1) grabbed him by the waist, (2) shoved him backwards, (3) spun around and broke free from a headlock, (4) dragged him from the driver's side to the passenger side of the vehicle, (5) essentially wrestled him to the ground, and (6) when Capt. Moore was on top of Askew on the ground, Askew spun around such that he wound up on top of Capt. Moore. Additionally, Capt. Moore testified that, as a result of the struggle with Askew, he suffered an abrasion on his elbow and one on his knee. Furthermore, Officer Gay, Derrick Nelson, and Joseph Johnson each testified that they witnessed portions of this physical struggle.
 {¶ 38} We conclude that this evidence, in the absence of each of the prosecutor's statements regarding Askew's failure to testify at trial, constituted overwhelming evidence that Askew was guilty of assault. Therefore, we find that the prosecutor's statements regarding Askew's failure to testify were harmless beyond a reasonable doubt with respect to his conviction for assault. Because we find the prosecutor's statements, in this context, were harmless beyond a reasonable doubt, we find that the prosecutor's earlier statements regarding Askew's failure to testify, to which Askew failed to object, cannot satisfy the third prong of the three-pronged test for plain error enunciated in Barnes, supra (i.e. the error did not affect Askew's substantial rights). Therefore, we decline to find plain error with regard to those statements as they relate to Askew's assault conviction.
 D. Conclusion {¶ 39} In conclusion, we sustain Askew's first assignment of error as it relates to his convictions for aggravated robbery and escape, and overrule it as it relates to his conviction for assault.
 III. {¶ 40} In his second assignment of error, Askew contends that his trial counsel's performance was so deficient that he did not function as the counsel guaranteed by the Sixth Amendment because he failed to: (1) take effective action to address the prosecutor's improper remarks regarding Askew's failure to testify at trial; and (2) impeach Capt. Moore's testimony at trial with his allegedly inconsistent testimony at the preliminary hearing.
 {¶ 41} In order to reverse a conviction or sentence based upon ineffective assistance of counsel a reviewing court must find: (a) deficient performance, "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Ballew (1996), 76 Ohio St.3d 244, 255, citing Strickland v. Washington (1984), 466 U.S. 668, 687. If a court can resolve a claim of ineffective assistance of counsel under only one prong of this two-pronged test, then the court does not have to analyze both prongs. See, e.g., State v.Madrigal (2000), 87 Ohio St.3d 378, 389.
 {¶ 42} With regard to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." Hasting, supra, at 508-509. Additionally, with regard to prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland at 694.
 {¶ 43} In light of our resolution of Askew's first assignment of error, we conclude that his second assignment of error is moot with regard to his convictions for aggravated robbery and escape. See App.R. 12(A)(1)(c). Therefore, we address this assignment of error only as it relates to Askew's conviction for assault.
 {¶ 44} Askew first argues that his trial counsel was ineffective in that he "failed to take any effective action" to address the prosecutor's statements regarding his failure to testify at trial. However, we have already found that the prosecutor's comments regarding Askew's failure to testify at trial were harmless beyond a reasonable doubt as they relate to his assault conviction. Therefore, Askew cannot demonstrate any reasonable probability that, but for his counsel's alleged deficiencies in responding to those comments, the result of the proceeding would have been different. Thus, he cannot satisfy the second prong of the Strickland test with regard to those alleged deficiencies. Accordingly, we find this argument has no merit.
 {¶ 45} Askew also contends that his trial counsel was ineffective in that he failed to cross examine Capt. Moore with regard to alleged inconsistencies between his testimony at the preliminary hearing and his testimony at trial. Askew notes that at the preliminary hearing on the original charges of escape and assault, Capt. Moore testified that Askew grabbed him by the gun belt during their struggle. However, Askew contends that the Grand Jury subsequently indicted him for assault, escape, and the more serious charge of aggravated robbery, Capt. Moore changed his testimony to reflect that Askew actually pulled on his weapon during the struggle. Thus, Askew now contends that his trial counsel should have cross-examined Capt. Moore regarding the inconsistencies in his testimony.
 {¶ 46} The scope of cross-examination clearly falls in the realm of trial strategy, and it is well-settled that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. State v. Campbell,90 Ohio St.3d 320, 339, 2000-Ohio-183; State v. Otte,74 Ohio St.3d 555, 565, 1996-Ohio-108; State v. Phillips,74 Ohio St.3d 72, 85, 1995-Ohio-171. Here, the record reveals that: (1) trial counsel requested a copy of the preliminary hearing transcript during the course of discovery; (2) the court ordered the clerk to serve a copy of the transcript upon trial counsel; and (3) the court continued the trial to allow time for the preparation of the transcript for the defense. Therefore, we infer that counsel was aware of the substance of Capt. Moore's preliminary hearing testimony before trial.
 {¶ 47} Our review of the transcripts reveals that Capt. Moore's testimony at both the preliminary hearing and at trial indicated that Askew grabbed him by the gun belt, that he felt a tug towards his holster, and that he responded by trapping his weapon. Capt. Moore's testimony at trial also included additional, specific statements that Askew grabbed and pulled on his weapon. While Capt. Moore did not make those statements during his preliminary hearing testimony, we note that the limited purpose of that hearing was to determine whether there was probable cause to believe that Askew had committed the offenses of assault and escape. Thus, the full extent of Askew's contact with Capt. Moore's weapon was not necessarily relevant at that time. But, it was particularly relevant to the aggravated robbery charge at trial.
 {¶ 48} Defense counsel's failure to cross-examine Capt. Moore about his prior testimony was no doubt a tactical decision, designed to avoid reinforcing the state's evidence with regard to the aggravated robbery charge. This decision was entirely reasonable under the circumstances, and, therefore, did not constitute ineffective assistance of counsel. Accordingly, we overrule Askew's second assignment of error as it relates to his assault conviction.
 IV. {¶ 49} In his third assignment of error, Askew contends that: "APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE." Although Askew has broadly worded his assignment of error to challenge the sufficiency of the evidence supporting each of his convictions, his argument narrows the focus of that assignment of error to the evidence supporting the requisite mental intent to commit the charged offenses. Askew further narrows the focus of this assignment of error by specifically contending that the evidence presented with regard to the aggravated robbery offense was insufficient to establish, beyond a reasonable doubt, that he knowingly tried to take Capt. Moore's gun.
 {¶ 50} Because Askew fails to identify the evidence contained in the record with regard to the requisite mental intent for the offenses of assault and escape, fails to present any argument as to why that evidence is insufficient to support his conviction, and fails to cite any legal authority in support of his argument, we disregard his assignment of error as it relates to those offenses. See App.R. 16(A)(7) and App.R. 12(A)(2). Therefore, we consider Askew's third assignment of error only as it relates to the requisite mental intent required to convict him of aggravated robbery.[1]
 {¶ 51} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia
(1979), 443 U.S. 307. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin
(1983), 20 Ohio App.3d 172, 175. Evidence supporting a defendant's conviction may be direct or circumstantial. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks, 61 Ohio St.3d 259 at paragraph one of the syllabus.
 {¶ 52} Pursuant to R.C. 2911.01(B), a person commits the crime of aggravated robbery if he: "* * * without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply: (1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties; (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.
 {¶ 53} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). When a defendant's purpose or intent is at issue, it is necessary to rely upon circumstantial evidence gathered from the surrounding facts and circumstances because intent cannot be proved by the direct testimony of a third person. State v. Lott (1990),51 Ohio St.3d 160, 168, certiorari denied 498 U.S. 1017.
 {¶ 54} Here, Askew contends that the evidence adduced at trial demonstrates only that he grabbed Capt. Moore by the gun belt, or tugged upon the gun belt during the struggle. While Capt. Moore did testify he felt a tug on his gun belt where his weapon was, during his struggle with Askew, he also testified that Askew was "pulling on my weapon." Capt. Moore also indicated that, during the struggle, he had to trap his weapon twice to keep it in the holster. When viewing this evidence in a light most favorable to the state, we find that a rational trier of fact could have found that Askew knowingly attempted to remove Capt. Moore's gun from its holster.
 {¶ 55} Moreover, we find that, after viewing the evidence in a light most favorable to the state, a rational trier of fact could find the remaining elements of aggravated robbery proven beyond a reasonable doubt. Accordingly, we find that sufficient evidence supports Askew's conviction for that offense and overrule his third assignment of error.
JUDGMENT AFFIRMED IN PART REVERSED IN PART AND CAUSEREMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, that the Appellant's convictions for aggravated robbery and escape be vacated, and the cause remanded for further proceedings consistent with this decision, and that Appellant and Appellee split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J.: Concurs in Judgment Only.
Abele, J.: Dissents.
[1] Even though we sustained Askew's first assignment of error as it relates to aggravated robbery, his argument here is not moot. If the evidence is not sufficient to support his conviction for aggravated robbery, then Askew is discharged as to this offense and cannot be retried. However, if sufficient evidence supports his conviction for this offense, then he can be retried.